# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36476

TWO JINN, INC., a California corporation
duly qualified to do business in Idaho and
doing business as Aladdin Bail Bonds and
Anytime Bail Bonds; JAMES GARSKE; and
SHANTARA CARLOCK,

    Plaintiffs-Respondents-Cross
    Appellants,

v.

DISTRICT COURT OF THE FOURTH
JUDICIAL DISTRICT OF THE STATE OF
IDAHO; DARLA S. WILLIAMSON, in her
official capacity as Administrative District
Judge for the District Court of the Fourth
Judicial District; LARRY D. REINER, in his
official capacity as Trial Court Administrator
for the District Court of the Fourth Judicial
District; and DIANE BURRELL, in her
capacity as Assistant Trial Court
Administrator for the District Court of the
Fourth Judicial District,

    Defendants-Appellants-Cross
    Respondents.

Boise, January 2011 Term

2011 Opinion No. 38

Filed: March 18, 2011

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of
Idaho, in and for Ada County. The Hon. James F. Judd, Senior District Judge.

The judgment of the district court is affirmed in part and reversed in part.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellants. Melissa N.
Moody argued.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for respondents. Scott McKay
argued.

---

EISMANN, Chief Justice.

This appeal concerns the authority of the administrative district judge to issue regulations governing bail bond agents. We hold that the administrative district judge has authority to adopt procedural regulations, but not substantive regulations.

## I. FACTS AND PROCEDURAL HISTORY

On April 12, 2007, the Plaintiffs filed this action challenging the bail bond guidelines adopted on April 16, 2004, by the Hon. Darla S. Williamson, as the Administrative District Judge of the Fourth Judicial District. The Plaintiffs are a bail bond agency licensed in the State of Idaho and two bail bond agents employed by the agency (collectively called "Bail Agents"). The Defendants are the District Court of the Fourth Judicial District of the State of Idaho and its Administrative District Judge, Trial Court Administrator, and Assistant Trial Court Administrator (collectively called "ADJ"). On August 22, 2008, ADJ adopted a revised set of bail bond guidelines ("Guidelines"), which are the subject of this litigation. The central issue is whether certain provisions of the Guidelines exceed the authority of ADJ. The dispute was tried to the district court, and it held that some of the challenged Guidelines did exceed ADJ's authority and some did not. ADJ appealed, and Bail Agents cross appealed. The specific guidelines at issue will be set forth below.

## II. ANALYSIS

### A. ADJ's Appeal.

In 1961, the Idaho legislature approved surety insurers issuing bail bonds. Ch. 330, § 557 1961 Idaho Sess. Laws 645, 920 (codified as Idaho Code § 41-2604). The statute also provided, "All courts, judges . . . shall accept and treat such bond, undertaking, obligation, recognizance or guaranty, when so executed by such insurer, as conforming to, and fully and completely complying with every such requirement of every such law, . . . rule or regulation." *Id.* In 2003, the Idaho legislature enacted legislation to specifically regulate bail agents. Ch. 104, 2003 Idaho Sess. Laws 328. The legislation "provide[d] requirements for the regulation of bail agents in this state in addition to the requirements generally applicable to producers under this chapter [Chapter 10, Title 41, Idaho Code]." *Id.* at §1, 328. It stated, "No person shall hold himself out to be a bail agent or sell, solicit, negotiate, advise or consult regarding the terms of bail bond contracts in this state unless that person is licensed as a producer in the line of surety insurance."

2

Ch. 104, § 3, 2003 Idaho Sess. Laws 328, 329 (codified at Idaho Code § 41-1039). However, prior to 2009 the statutes addressing bail in trial courts did not address bail bonds because they had been enacted in 1864 before bail bonds existed. *Leader v. Reiner*, 143 Idaho 635, 639-40, 151 P.3d 831, 835-36 (2007). In 2009, the legislature repealed those statutes and enacted the Idaho Bail Act, Ch., 90, §§ 1 & 2, 2009 Idaho Sess. Laws 259, 259, in order "to provide a uniform and comprehensive statewide process for the administration of bail in criminal cases," *id*. at 260. That Act specifically addressed posting bail bonds as bail in criminal cases.

The central issue of ADJ's appeal is its general authority to regulate bail bond agents. The legislature has the authority to divide the State into judicial districts, Idaho Const. Art. V, § 11, and it has created seven judicial districts, Idaho Code § 1-801. In each judicial district there is an administrative district judge. Idaho Code § 1-703. The courts in Idaho constitute a unified and integrated judicial system for administration and supervision by the Supreme Court. Idaho Const. Art. V, § 2. The powers and duties of an administrative district judge are those established by the Supreme Court. Idaho Ct. Admin. R. 42(e); Idaho Code § 1-907. On August 4, 2005, the Supreme Court issued an order setting forth the job description, powers, and duties of an administrative district judge. That order provided that the administrative district judge in each judicial district "has administrative supervision and authority over the operation of the district courts and magistrate division in the district," including the power to "establish guidelines for bail bonds with regard to posting, forfeiture, exoneration and all other matters."

The power granted to each administrative district judge is "administrative supervision and authority" over the courts in the judicial district. The powers are administrative, to establish procedures for the operation of the courts in the judicial district. In addressing the difference between procedure and substantive law, we have stated as a general guideline: "Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated." *State v. Currington*, 108 Idaho 539, 541, 700 P.2d 942, 944 (1985) (quoting *State v. Smith*, 527 P.2d 674, 677 (Wash. 1974)). Thus, the issue is whether the Guideline provisions at issue establish procedures or substantive law.

Bail agents are licensed by the Department of Insurance. Idaho Code § 41-1039. The Trial Court Administrator (TCA) maintains a list of licensed bail agents who are permitted to

submit bail bonds in the Fourth Judicial District. Licensed bail agents who are not on the list cannot submit bail bonds in the District. The district court correctly held, "The ADJ has the authority to adopt *procedural* Bail Bond Guidelines regulating the bail bond business in the Fourth Judicial District." (Emphasis added.) It determined that various provisions of the Guidelines were substantive rather than procedural, and that ADJ has no right or power to implement, apply or enforce within the Fourth Judicial District certain Guidelines. It enjoined ADJ from further implementation, application, or enforcement of those Guidelines.

In its judgment, the court held that certain Guidelines exceeded the authority of ADJ to adopt procedural guidelines by:

> ignoring the agency relationship between a bail agent and the surety or bail agency; imposing bail agent qualification standards greater than those imposed by the Idaho Department of Insurance (hereinafter "DOI"), except as they relate to a bail agent's family relationship to a Fourth Judicial District judge or a bail agent's simultaneous employment in a court-related position; [1] requiring bail agents to ensure that a forfeited bond is paid; and providing sanctions for a bail agent's failure to pay a forfeited bond.

The guidelines it specifically held that could no longer be enforced were the following:

**a. Section 1.** Section 1 contains definitions applicable to the Guidelines. In the injunction portion of the judgment, the court did not limit its injunction to specific definitions, but it did state in another part of the judgment that ADJ had no power to implement, apply, or enforce Guidelines that "Define 'bail agents' as the responsible party to ensure that a forfeited bond is timely paid, as set forth in Section 1 of the Guidelines." There are two definitions that fit within that proscription. They are:

> **Bail agent** - the bail; a person who offers an undertaking acceptable to the court for release of the defendant and the person to whom custody of the defendant is released. A bail agent must be licensed by the Idaho Department of Insurance as provided by Idaho Code Title 41 Chapter 10. For purposes of these Guidelines, *the bail agent is considered the responsible party to ensure that a forfeited bond is timely paid*, notwithstanding the right of the state or county to pursue collection of a forfeited bond from the insurance company, and notwithstanding any agreement between the bail agent and the insurance company. Bail agent also includes the supervising agent. [Emphasis added.]

---

[1] Bail Agents have not challenged these two exceptions on appeal.

4

**Supervising Agent** - a bail agent who hires, appoints, employs, or contracts another bail agent to act on his/her behalf. For the purpose of these Guidelines, *the supervising agent shall be responsible for seeing that the bail bonds posted by bail agents acting on behalf of the supervising agent are timely paid*. Furthermore, for the purpose of these Guidelines, no bail agency shall list more than one supervising agent, and the supervising agent shall be named on the Application to Become an Authorized Bail Agent Within the Fourth Judicial District, State of Idaho. The supervising agent must acknowledge his/her capacity as supervising agent by signing the application. [Emphasis added.]

**b. Section 11.I.B.** Section 11.I.B requires licensed bail agents seeking to be placed on the approved list to "[h]ave a criminal history records fingerprint check completed by the Idaho State Police Bureau of Criminal Identification (see section entitled 'Criminal History Checks')."

**c. Section 11.III(A), (D), (F), (G), (H), (J), (K) & (L).** These portions of the Guidelines provide that a licensed bail agent's request to be put on the approved list could be rejected for various reasons. The district court held that the request could not be rejected for the reasons following:

A. The criminal history check reveals:

(1) any felony crime for which the applicant or the applicant's proposed insurance company has been convicted, pled guilty, received a withheld judgment, or otherwise sentenced.

(2) any misdemeanor crime involving theft, fraud, or any other crime of dishonesty for which the applicant or the applicant's proposed insurance company has been convicted, pled guilty, received a withheld judgment, or otherwise sentenced within the last ten (10) years, including crimes committed before age 18 years.

(3) three or more misdemeanor crimes for which the applicant or the applicant's proposed insurance company has been convicted, pled guilty, received a withheld judgment, or otherwise sentenced within the last five (5) years, including crimes committed before age 18 years.

(4) any combination of three or more of the following in which the applicant has been convicted, pled guilty, received a withheld judgment, or otherwise sentenced: failure to appear, contempt of court, or probation violation within the last five (5) years.

. . . .

5

D. The applicant has four or more prior violations of these Guidelines and/or previous Fourth Judicial District policies or guidelines for bail agents which have not been excused by the Administrative District Judge following a hearing.

. . . .

F. The applicant was denied the ability to offer bail bonds for acceptance or was removed from the list of authorized bail agents in this or another jurisdiction.

G. The application processing reveals the applicant has previously had a license suspension or revocation imposed by the department of insurance of any state of the United States.

H. The applicant or his/her insurance company has previously failed to have paid a forfeited bond.

. . . .

J. Financial insolvency of the applicant or his/her insurance company.

K. The applicant has not satisfied all obligations to any court incurred while working with another bail agency.

L. The applicant was previously removed from the list of authorized agents.

d. **Sections 14.I.A(1), (3) to (6), (8) to (11), (14), (16) & (17).** Section 14 of the Guidelines lists grounds for removing a licensed bail agent from the approved list. The grounds enjoined by the district court are the following:

(1) The bail agent, bail agency, or the bail agent's insurance company has been subjected to disciplinary measures imposed by the Idaho Department of Insurance or by any judge or Trial Court Administrator in the state of Idaho.

. . . .

(3) The bail agent and/or bail agency has been convicted of, pled guilty to, received a withheld judgment for, or otherwise sentenced on any felony crime, including dispositions in juvenile court.

(4) The bail agent and/or bail agency has been convicted of, pled guilty to, received a withheld judgment for, or otherwise sentenced on any misdemeanor

6

crimes involving theft, fraud or any other crime of dishonesty within the last ten (10) years, including dispositions in juvenile court.

(5) The bail agent and/or bail agency has been convicted of, pled guilty to, received a withheld judgment for, or otherwise sentenced on three or more misdemeanor crimes within the last five (5) years, including dispositions in juvenile court.

(6) The bail agent and/or bail agency has been convicted of, pled guilty to, received a withheld judgment for, or otherwise sentenced on any combination of three or more of the following: failure to appear, contempt of court, or probation violation within the last five (5) years.

. . . .

(8) The bail agent has been denied the ability to offer bonds for acceptance or was removed from the list of authorized agents in another jurisdiction or judicial district.

(9) The bail agent and/or bail agency has used fraudulent or dishonest practices or has shown himself/herself in any way to be incompetent, untrustworthy, or a source of injury and loss to the public, the court, or others.

(10) The bail agent has provided false, incorrect, or incomplete information in any format, verbal or written, to a judge, clerk, deputy clerk, or the office of the Trial Court Administrator of the Fourth Judicial District.

(11) The bail agent has violated the Bail Bond Guidelines for the Fourth Judicial District, any previous Fourth Judicial District policies or guidelines for bail agents, any administrative order pertaining to bail agents, Idaho Court Rules and/or Idaho statutes.

. . . .

(14) For a violation of these Guidelines and for those actions or inactions deemed detrimental to the administration of bail bonds.

. . . .

(16) The applicant has not satisfied all obligations to any court incurred while working with another bail agency.

(17) Upon mailing a fourth violation notice to a bail agent of a violation of these Guidelines and/or any previous Fourth Judicial District policies or guidelines for bail agents, the Trial Court Administrator's Office may simultaneously request a hearing with the Administrative District Judge for the

purpose of requiring the agent to appear before the Administrative District Judge and present evidence and/or testimony to show why the agent's name should not be permanently removed from the list of authorized agents.

e. **Section 14.I.B(1) & (2).** Section 14.I.B provides that for three listed violations the TCA could give notice that they be remedied within ten days. If the licensed bail agent or the supervising agent does not do so within the required time, their names "will be immediately removed from the List of Authorized Bail Agents." The two violations enjoined by the district court were the following:

(1) A forfeited bond has not been paid by the 181st day after the date of the forfeiture, and by the 183rd day after forfeiture the bail agent has not filed a sufficient motion in trial court to set aside the forfeiture and/or for exoneration using the forms provided in these Guidelines or has provided proof of incarceration of the defendant within the required time period allowed by law. If the bail agent has filed a sufficient motion in the trial court to set aside the forfeiture and/or for exoneration by the 183rd day after the forfeiture, and the judge sets aside the forfeiture in the underlying case, the violation for the forfeiture will no longer be considered a violation of the guidelines if the agent provides the Trial Court Administrator's Office a copy of the order setting aside the forfeiture.

(2) The bail agent fails to ensure that the forfeited bond is paid after denial by the trial judge of a motion to set aside the forfeiture and/or for exoneration, and no pending motions are before the trial judge for reconsideration. However, if the bail agent appeals the decision of the presiding judge and a stay of execution is ordered, and if the bail agent provides a copy of the notice of appeal and stay of execution to the Trial Court Administrator's Office, the agent's name will not be removed from the list of authorized agents while the appeal is pending.

f. **Section 14.I.C(2).** Section 14.I.C provides that for three listed violations, the bail agent's name can be immediately removed from the list of authorized bail agents without prior notice. The violation enjoined by the district court was:

(2) The bail agent has written a check to the Clerk of the Court in payment of one or more forfeited bonds and the financial institution upon which the check has been written has failed to pay the check. In this event, the bail agent shall be immediately temporarily removed from the List of Authorized Bail Agents. If the bail agent is a supervising agent, all bail agents working under the supervising agent shall also be removed from the list. The bail agent or agents shall be immediately notified of the temporary removal and the Trial Court Administrator's Office shall immediately file a petition with the Clerk of the Court requesting an immediate hearing before the Administrative District Judge for review of the removal and for the purpose of presenting evidence and/or

8

testimony to show why the agent's name should be removed from the list. The bail agent may present evidence at the hearing requesting reinstatement to the list. As a condition of reinstatement, the Administrative District Judge may require the agent to reimburse the county for all costs incurred in having the agent's name removed.

**g.  Section 17.**  Section 17 deals with exonerations of bail bonds after forfeiture.  It provides as follows:

> After the Clerk's Office has mailed a notice of forfeiture to the insurance company or its designated agent, the insurance company or its designated agent will have one hundred eighty (180) days from the date of the forfeiture to:
>
> (1) Surrender the defendant; or
> (2) Pay to the Clerk of the Court the full amount of the forfeited bond; or
> (3) File with the court a sufficient motion for exoneration or to set aside the forfeiture using the forms provided in these Guidelines.
>
> Once a notice of forfeiture has been mailed to the bail agent, the agent must respond with one of the above three actions.
>
> A bail bond is not deemed to be exonerated until the order is signed by the presiding judge.

From the district court's decision, the provision that was clearly not procedural was the sentence stating, "Once a notice of forfeiture has been mailed to the bail agent, the agent must respond with one of the above three actions."  It would require the bail agent to "[p]ay to the Clerk of the Court the full amount of the forfeited bond" if the agent could not surrender the defendant or provide a sufficient basis for exoneration or setting aside the forfeiture.  The court may also have held not to be procedural the wording that the bail agent *must* respond with one of the three listed actions.  Although the agent cannot be required to pay the forfeited bond, he or she may also be unable to surrender the defendant or provide grounds for exonerating the bond or setting aside the forfeiture.

**h.  Section 19.**  Section 19 of the Guidelines provides as follows:

> If a defendant for whom a bond has been posted dies prior to forfeiture or within the 180-day period following the forfeiture, the person posting the bond must sign and file with the Clerk of the Court the following documents:
>
> (1) "Stipulation to Exonerate Bond - Death of Defendant"
> (2) "Order to Exonerate Bond - Death of Defendant"

9

(3) Certified copy of the death certificate or coroner's report from the appropriate state or county agency in the state in which the death occurred.

At a minimum, the death certificate or coroner's report must specify the full name of the deceased, date of birth, social security number, and the date of death. The Trial Court Administrator must be satisfied that the named defendant is the deceased.

In its judgment, the district court stated that ADJ has no right or power to "Condition a request for exoneration following the death of a criminal defendant upon the TCA's satisfaction that the defendant is deceased as set forth in Section 19 of the Bail Bond Guidelines."

**i. Section 22.** Section 22 of the Guidelines provides:

Forms have been developed and distributed to all bail agents authorized to offer bail bonds for acceptance in the Fourth Judicial District. When properly completed in their entirety by the bail agent, these forms provide all of the information required to determine if a bond motion should be approved or denied. For the sake of consistency, bail agents shall use only the forms provided by the Trial Court Administrator's Office. In rare instances, bail agents may need to modify a form only slightly to supplement the information provided.

It should be noted that only the bail agent who offered the bail bond for acceptance or the supervising agent or an attorney on his/her behalf may sign bail-related documents that are filed with the Court.

In its judgment the district court stated that ADJ could not limit the signing of bail-related documents to "the individual bail agent who offered the bail bond for acceptance, the supervising agent or an attorney acting on the individual agent's behalf."

On appeal, ADJ argues that the courts have the inherent authority to regulate bail agents and to decide which agent will be permitted "to write bail in their courtrooms." ADJ also argues that a bail agent does not have any right to write bonds in a particular judicial district, nor does the agent have "a protected property interest in compelling the Fourth Judicial District to do business with him/her." According to ADJ, "[t]he inherent authority of the courts applies to the courts' ability to regulate matters pertaining to bail, which includes choosing which individual bail agents in a particular judicial district meet that district's needs." Citing *State v. Currington*, 108 Idaho 539, 700 P.2d 942 (1985), ADJ asserts, "This Court has specifically held that the right to grant bail is a procedural right, not a substantive one."

The *Currington* majority held that "as to the very narrow issue presented here, *i.e.*, the authority of a trial court to allow post-conviction bail to a convicted criminal made ineligible for bail by a statutory enactment, the issue is one of procedure rather than of substantive law." *Id.* at 541, 700 P.2d at 944. It did not hold that all matters that in any way relate to bail, including determining which bail agents can write bail bonds, are matters of procedure.

Bail agents are licensed by the State to engage in the business of writing bail bonds. Over the years, various judges have been dissatisfied with bail bonds and/or bail agents. Some set "cash only" bail in an attempt to force a defendant to post a cash bail rather than a bail bond, typically when the defendant was alleged to be in contempt for failing to pay sums to the court and the judge wanted cash available to pay those sums. Although incarceration of a defendant is sometimes an effective way of encouraging the defendant's family or friends to provide the bail money, the Idaho Constitution prevents cash-only bail prior to conviction of noncapital offenses, whether it is conviction of a crime or of contempt, Idaho Const. Art. I, § 6, and the Federal Constitution prohibits incarceration of indigents because they were unable to pay, *Tate v. Short*, 401 U.S. 395 (1971). The Idaho Bail Act enacted in 2009 provides that "a defendant shall not be required to post bail in the form of a cash deposit." Idaho Code § 19-2907(2). Some judges have thought bail agents charged too much, and so have set bail specifying one amount for a bail bond and a lesser amount for cash, typically 10% of the amount of the bail bond which would approximate the amount of the bail bond premium. Because a defendant usually has the right to post a bail bond in the amount of the cash bail, Idaho Const. Art. I, § 6, a knowledgeable defendant could simply post a bail bond in the amount of the cash bail. In addition, the judge sets the amount of bail, which is generally the primary factor in determining the cost of the bail bond premium. A judge who wants a lower premium can simply lower the amount of the bail. Another criticism has been that some bail agents permit a defendant to pay the bond premium over time, allowing the defendant to bond out before paying the entire premium. "The purpose of bail is to prevent the punishment of innocent persons and at the same time compel the presence of the prisoner when required . . . ." *State v. Iverson*, 76 Idaho 117, 119, 278 P.2d 205, 206 (1954). Bail bonds permit some defendants to be released prior to trial, thereby avoiding punishment prior to acquittal or conviction. "The purpose of a bail bond is merely to assure the defendant's appearance at judicial proceedings . . . ." *State v. Overby*, 90 Idaho 41, 46, 408 P.2d 155, 157 (1965) (footnote omitted). The bail agent has a financial incentive to assure the

defendant's appearance, typically because the surety requires the bail agent to reimburse the surety for sums it pays on forfeited bonds. Whether or not the bail agent is willing to trust the defendant to pay the premium after posting bail is of no concern to the court. Some judges express frustration as to how long after forfeiture it takes the bail bond agent to locate the defendant and return him or her to court. The legislature has set that time at 180 days, Idaho Code § 19-2922(5), which is a substantive statute, not simply procedural.

This case does not involve this Court's inherent authority or the separation of powers. As stated above, this Court granted all administrative district judges "administrative supervision and authority" to "establish guidelines for bail bonds with regard to posting, forfeiture, exoneration and all other matters." We did not grant authority to issue substantive rules regarding bail agents. The district court held that all of the specific guidelines addressed above were substantive rather than procedural and were therefore beyond the authority of ADJ. On appeal, ADJ addresses only one particular guideline.

The definition of "bail agent" in the Guidelines provides, "For purposes of these Guidelines, *the bail agent is considered the responsible party to ensure that a forfeited bond is timely paid*, notwithstanding the right of the state or county to pursue collection of a forfeited bond from the insurance company . . . ." The district court held that this was not a procedural rule. It was substantive. It reasoned that because an agent is not liable on a contract executed for a disclosed principle, this section was substantive because it purported to make the bail agent personally liable on the bond issued by the disclosed surety. ADJ contended that the section was not intended to make the individual bail agent financially responsible for the payment of the bond. Rather, it contended that the section "means that the bail agent is the individual whose job is to facilitate the payment of the bond from the surety or other responsible entity." The district court did not find this interpretation of the section to be in accord with its plain wording, especially when Section 17 of the Guidelines was considered. That section provides that within 180 days after mailing notice of forfeiture to the bail agent, "the bail agent must" do one of the following: "(1) Surrender the defendant; or (2) Pay to the Clerk of the Court the full amount of the forfeited bond; or (3) File with the court a sufficient motion for exoneration or to set aside the forfeiture using the forms provided in these Guidelines." Thus, under Section 17, if the bail agent cannot surrender the defendant and does not have grounds to set aside the forfeiture, the agent must "[p]ay the Clerk of the Court the full amount of the forfeited bond." In addition,

12

under Section 11 of the Guidelines, a licensed bail agent can be disqualified from being on the approved list if the agent is insolvent or "has not satisfied all obligations to any court incurred while working with another bail agency," or if the agent "has previously failed to have paid a forfeited bond." Under Section 14, a licensed agent can be removed from the list if "[a] forfeited bond has not been [timely] paid" or if "[t]he bail agent fails to ensure that the forfeited bond is paid after denial by the trial judge of a motion to set aside the forfeiture and/or for exoneration." These provisions also seek to require the bail agent to pay forfeited bonds.

We agree with the district court that Sections 1 and 17 of the Guidelines are substantive, not procedural, because they purport to make the bail agent personally liable on the surety bond. They therefore exceed the authority of ADJ. Even if these Guidelines could reasonably be construed as contended by ADJ, they would still be substantive because they would require the bail agent "to facilitate the payment of the bond from the surety or other responsible entity." It would require the agent to take some undefined action to obtain payment from the surety. The district court held, "The provisions of the Guidelines that require a bail agent 'to ensure' that a forfeited bond is paid and provide sanctions for not paying a forfeited bond are unlawful." We agree.

The Guidelines also required that bail agents use only the forms provided by the Trial Court Administrator's Office, unless they needed "to modify a form only slightly to supplement the information provided." The district court held that these forms exceed ADJ's authority "[t]o the extent that these forms include information and requirements that have been found in this opinion to be substantive rather than procedural." ADJ has not challenged this ruling on appeal, and so we affirm it.

In summary, we agree that the portions of the Guidelines addressed above are substantive rather than procedural and that they therefore exceed the authority that this Court delegated to ADJ. The district court did not err in enjoining ADJ from issuing the guidelines set forth in its judgment.


**B. Bail Agents' Cross Appeal.**

**1. Criminal history checks.** Bail Agents challenge two rulings by the district court. First, they allege that the district court erred in ruling that ADJ could require bail agents to submit criminal history checks under certain circumstances. The court held that a criminal

history check could be required when a bail agent applies to be on the approved list after the first year of being licensed by the Department of Insurance and when seeking to have that license renewed. The district court did not justify that holding on the ground that such a requirement was procedural. Rather, it upheld it because the Department did not require annual criminal history checks after licensing a bail agent, but instead relied upon the statutory requirement that a producer, which includes a bail agent, report any criminal prosecution of the producer to the Department director within thirty days of the initial pretrial hearing date. Idaho Code § 41-1021(2). We agree that such requirement is not procedural. ADJ does not have the authority to license bail agents or to determine which bail agents should be licensed or permitted to write bail bonds. Section 12 of the Guidelines exceeds the authority of ADJ in its entirety. Therefore, we reverse that part of paragraph 5 of the judgment that provides:

> The Bail Bond Guidelines may require a bail agent to submit the results of a criminal history records finger print check with that agent's initial application for placement on the authorized list if the bail agent has held a producer license issued by the DOI [Department of Insurance] for more than one year. The Bail Bond Guidelines may also require a bail agent to submit the results of such a criminal history check with the bail agent's renewal application.

**2. Due process.** Second, Bail Agents contend that they were denied due process of law. The Guidelines require that each bail bond business designate a "supervising agent,"[2] and that other bail agents working for that business designate a supervising agent in order to be added to the list of approved bail agents. The supervising agent must also be on the list. Mr. Garske was the supervising agent for the thirty-eight people working as Aladdin bail agents, and he was on the list. When his license was renewed by the Department of Insurance, the Guidelines required him to have "a criminal history records fingerprint check completed by the Idaho State Police Bureau of Criminal Identification" and they required that the results "be mailed from the Bureau of Criminal Identification directly to the Trial Court Administrator's Office." The Guidelines also provided, "Criminal history checks received from any other address will not be accepted."[3]

---

[2] Bail Agents have not challenged on appeal the requirement that bail agents have a supervising agent.

[3] Although ADJ can no longer require the criminal history records fingerprint check, there could be procedural requirements that could still raise this issue, such as providing a copy of license renewal.

14

On January 3, 2006, Mr. Garske received a notice from the TCA notifying him that his license had expired and that he had not submitted the required documents to remain on the approved list, including the criminal history check. The notice gave him until noon on January 13, 2006, to submit the required documents or his name, and the names of bail agents for whom he was the supervising agent, would be removed from the approved list. He commenced the process to receive the criminal history check, and on January 5, 2006, he submitted the documents he could obtain and a receipt from the Idaho State Police showing that he had paid for the criminal history check. The State Police sent the criminal history result to the TCA on January 9, 2006, by statehouse mail, but the TCA had not received those results by the noon deadline on January 13, 2006. The TCA therefore removed Mr. Garske from the approved list and, as required by the Guidelines, the names of the thirty-eight agents for whom he was the supervising agent.

In their argument, Bail Agents seem to raise two due process violations. First, they contend that "they were entitled to notice and a hearing regarding the sufficiency of Mr. Garske's attempt to rectify his violation of the Guidelines before his name could be removed for failing to comply." The removal of Mr. Garske from the authorized list is entitled to the protection of procedural due process. Removal from the list would prohibit Mr. Garske from writing bail bonds in four counties. *See Kuna Boxing Club, Inc. v. Idaho Lottery Comm'n*, 149 Idaho 94, 101, 233 P.3d 25, 32 (2009) (suspension of an issued license may not occur without due process). "Procedural due process protects the minimum guarantees of notice and a hearing where deprivation of a property interest may occur. The opportunity to be heard must occur at a meaningful time and in a meaningful manner." *Boise Tower Assocs., LLC v. Hogland*, 147 Idaho 774, 780, 215 P.3d 494, 500 (2009) (citations omitted).

Before taking any action, the TCA gave Mr. Garske notice and an opportunity for a hearing regarding his failure to submit the necessary documents to be retained on the list. Rather than request a hearing, Mr. Garske attempted to comply with the Guidelines during the ten days he was given. He contends that he should have been given another opportunity for a hearing regarding the sufficiency of his attempt. He offers no authority to support this argument.

After receiving the notice, Mr. Garske contacted the State Police and paid the fee for the background check. Once he had done so, he had to wait for the background check to be completed, the results sent to the TCA, and the TCA to receive those results. Mr. Garske's

contention was that he was entitled to a hearing before the TCA could take any action if the results were not received timely. The obvious purpose would be to delay proceedings in the hope that the results would arrive at the TCA's office before he was removed from the list. If a hearing were held and the determination was that the results had not yet arrived, then he could make another attempt (i.e., by calling the State Police to see whether they had been sent), and then be entitled to another hearing as to the sufficiency of that attempt to comply. This could go on ad infinitum. Due process does not require notice and an opportunity for a hearing regarding the sufficiency of his attempt to rectify the deficiency addressed in the first notice.

The Bail Agents also contend that "the pre-hearing removal of Mr. Garske and 38 other agents in 2006 did not comply with the requirements of procedural due process." ADJ contends that they were not entitled to the protection of due process because they had no property interest in remaining on the approved list in the Fourth Judicial District. These agents were all licensed by the State of Idaho, which granted them the right to sell bail bond contracts throughout the state. The right to pursue an occupation is a property interest that is protected by due process. *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 238-39 (1957); *H & V Engineering, Inc. v. Idaho State Bd. of Prof. Engineers*, 113 Idaho 646, 649, 747 P.2d 55, 58 (1987). Removing these agents from the approved list in the Fourth Judicial District prevented them from practicing their chosen occupation in four of Idaho's counties, including its most populous county. ADJ argues that they could still sell bail bond contracts in the other six judicial districts, but such argument is unpersuasive. They were entitled to practice their occupation in those four counties and prohibiting them from doing so significantly impinged upon their right to practice their chosen occupation. Under ADJ's argument, the administrative district judges in all judicial districts could ban these agents from writing bail bonds in their respective districts without notice and an opportunity for a hearing, thereby banning them from writing bail bonds anywhere in the state, and they would not be entitled to procedural due process because each administrative district judge only banned them from writing bonds in his or her judicial district.

With respect to these 38 agents, the Bail Agents are correct that they were denied procedural due process. The TCA removed them from the approved list without giving them any notice or opportunity for a hearing. They were removed for Mr. Garske's failure to comply with the Guidelines. Assuming that they could be removed for his failure to comply, they were still entitled to due process.

16

### III. CONCLUSION

We affirm the judgment of the district court with the exception of the portion of paragraph 5 of the judgment quoted above, which we reverse. We remand this case for further proceedings that are consistent with this opinion. We award costs on appeal to respondents.

Justices BURDICK and W. JONES, **CONCUR**.

J. JONES, Justice, specially concurring.

I concur in the Court's opinion but think it appropriate to briefly comment on several aspects of this case. First, although the Court appropriately found it unnecessary to address the issue of its inherent power, I believe that the provisions contained in the Guidelines, with the possible exception of the provisions that appear to make the bail agent a surety, are within the inherent powers of this Court. The problem here is that the judicial power is vested by the Constitution in the judiciary under "supervision by the Supreme Court." Idaho Const. Art. V, § 2. In a subject area that demands a fair amount of uniformity on a statewide basis and where there is interaction with a somewhat comprehensive legislative scheme, particularly provisions enacted in 2003 and amended in 2010 in Idaho Code §§ 41-1036 through 1045, it is incumbent on the Supreme Court to provide that supervision. The Court has been remiss in this regard because the order issued by the Court on August 4, 2005, giving the administrative judge in each judicial district the power to "establish guidelines for bail bonds with regard to posting, forfeiture, exoneration, and other matters," was rather open-ended. The Legislature has recognized the Court's inherent power and understood that it would likely promulgate rules and uniform guidelines in the bail arena. Indeed, the Legislature provided "the supreme court shall retain[4] its inherent authority to regulate the transaction of bail with the court, including promulgating rules and uniform guidelines." § 41-1037(3). The Court should have provided more guidance to the

---

[4] It might be observed that there was no need to say the Court shall "retain" its inherent authority, because only a constitutional amendment could deprive the Court of such authority.

administrative judges and also provided for review of bail bond provisions proposed for adoption. However, that remains to be addressed in the future. At the present time, the Court has made the determination that the Guidelines exceed the grant of authority envisioned in the August 5, 2005 order.


        Justice HORTON CONCURS.