## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 43079-2015

| | | |
|---|---|---|
| SHARON R. HAMMER, | ) | |
| | ) | Twin Falls, November 2016 Term |
| Plaintiff-Appellant, | ) | |
| | ) | 2016 Opinion No. 149 |
| v. | ) | |
| | ) | Filed: December 21, 2016 |
| CITY OF SUN VALLEY; NILS RIBI; | ) | |
| and DeWAYNE BRISCOE, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Blaine County.  Hon. Jonathan P. Brody, District Judge.

The judgment of the district court is <u>affirmed</u>.

Wyatt Johnson, Angstman Johnson, Boise, argued for appellant.

Kirtlan Naylor, Naylor and Hales, P.C., Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Blaine County from a judgment dismissing the Plaintiff's lawsuit seeking to recover under the Idaho Protection of Public Employees Act.  The district court ruled that the Plaintiff had waived her claim against the City of Sun Valley pursuant to a release she had signed and that the Act did not provide a cause of action against City officials.  We affirm the district court.

## I.
### Factual Background.

On June 1, 2008, Sharon R. Hammer ("Plaintiff") began working as the City Administrator for the City of Sun Valley ("City") pursuant to a written employment agreement ("Employment Agreement").  On November 8, 2011, DeWayne Briscoe defeated the incumbent mayor, Wayne Willich, in the mayoral election.  On November 10, 2011, the City's city council

conducted a special executive session to discuss allegations of improper use of public funds and equipment by the Plaintiff. The following day, her husband, an attorney, sent a letter to Mayor Willich threatening litigation. On November 18, 2011, the City placed the Plaintiff on paid administrative leave, and three days later her husband filed a lawsuit on her behalf against the City and members of city government. Following an investigation, Plaintiff resumed her duties on December 27, 2011, and no disciplinary action was taken.

On January 3, 2012, Mr. Briscoe was sworn in as the mayor. The next day, he placed the Plaintiff on paid administrative leave and notified her of another investigation. On January 12, 2012, the Plaintiff voluntarily dismissed her pending lawsuit against the City and members of city government. On January 19, 2012, the Plaintiff was terminated from employment based upon the unanimous vote of the Mayor and city council.

The Employment Agreement provided that the Mayor could terminate the Plaintiff's employment without cause after consulting with each member of the city council. It further provided that if the termination was without cause, the Plaintiff was entitled to severance pay, and that if she was terminated for cause, she was not entitled to severance pay. Finally, it provided that the severance pay would be the Plaintiff's "sole exclusive remedy for any and all claims for damages of any kind arising from a termination without cause," that she "waives her right to bring a claim of any kind for damages against Employer [the City] arising from a termination without cause," and that "receipt of the severance payment is subject to execution of a release of all claims against the City of Sun Valley." On January 23, 2012, Plaintiff signed a "Supplemental Release Pursuant to City Administrator Employment Agreement" (Supplemental Release), which was drafted by her husband and which released claims against the City upon receipt of the severance payment. The City paid the Plaintiff the severance payment provided for in the Employment Agreement.

On June 29, 2012, the Plaintiff filed this action against the City and ten individuals in their official capacities as city officials or employees. On June 29, 2012, she filed an amended complaint naming as defendants the City; Mr. Briscoe, the current mayor; and Nils Ribi, a current member of the city council. The district court dismissed this case as to all Defendants, and the Plaintiff timely appealed.

2

## II.

### Did the District Court Err in Granting the City's Motion for Summary Judgment?

When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id*. If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id*.

In her amended complaint, the Plaintiff asserted a single cause of action pursuant to the Idaho Protection of Public Employees Act ("IPPEA"), Idaho Code sections 6-2101, *et seq*., for retaliatory discharge. The City moved for summary judgment on the ground that her action against the City was barred by the Supplemental Release. That document provides:

> Upon payment of the severance payment required pursuant to Section 3.A. of the City Administrator Employment Agreement dated June 1, 2008, I release the City Of Sun Valley for any claims defined in Section 3.A. of the City Administrator Employment Agreement as were intended when the City Administrator Employment Agreement was entered into on June 1, 2008.

The Supplemental Agreement stated that the Plaintiff released "any claims defined in Section 3.A. of the City Administrator Employment Agreement."

Section 3.A. of the Employment Agreement stated:

SECTION 3.　　　　　TERMINATION AND SEVERANCE PAY
　　　　A.　　Employer, acting through the Mayor, may terminate Employee's employment, without cause, for any reason or no reason. Any such decision to terminate shall occur only after the Mayor consults with each member of the City Council. Upon such termination, Employer shall pay Employee, as severance pay, a lump sum cash payment equal to six (6) months, base salary described in Section 5, Subsection A.
　　　　The severance payment herein is intended to be Employee's sole exclusive remedy for any and all claims for damages of any kind arising from a termination without cause and such severance payment is hereby agreed to be reasonable, fair and equitable by both parties to this Agreement. Accordingly, Employee waives her right to bring a claim of any kind for damages against Employer arising from a termination without cause. Consequently, receipt of the severance payment is

3

subject to execution of a release of all claims against the City of Sun Valley. A termination without cause shall not entitle Employee to an informal review under any section of the City of Sun Valley Personnel manual ("Personnel Manual").

It is undisputed that the Plaintiff received the severance payment in the amount required. In addition, Section 3.B. of the Employment Agreement provides, "In the event Employee is terminated for 'cause', then Employer shall not be obligated to make any severance payment to Employee."

The Plaintiff contends that the severance payment she received was for past services and, therefore, there was no consideration for the release of any claims. "Whether a contract is ambiguous is a question of law over which we exercise free review." *Howard v. Perry*, 141 Idaho 139, 142, 106 P.3d 465, 468 (2005). The Plaintiff states on appeal, "The Supplemental Release is clear on its face, and is not ambiguous." We agree. "If the contract is clear and unambiguous, the determination of the contract's meaning and legal effect are questions of law, and the meaning of the contract and intent of the parties must be determined from the plain meaning of the contract's own words." *City of Idaho Falls v. Home Indem. Co.*, 126 Idaho 604, 607, 888 P.2d 383, 386 (1995). (Citation omitted).

The district court correctly stated:

> The release [Supplemental Agreement] operates to "release the City of Sun Valley for any claims defined in Section 3.A. of the City Administrator Employment Agreement." When looking to Section 3.A. of plaintiff's employment agreement, it unambiguously provides that "severance payment herein is intended to be Employee's sole exclusive remedy for *any and all claims* for damages of any kind arising from a termination without cause." It also goes on to say that "[c]onsequently, receipt of the severance payment is subject to a release of *all claims* against the City of Sun Valley."

The use of the term "severance payment" does not necessarily mean that it is compensation for past services. In *Parker v. Underwriters Labs., Inc.*, 140 Idaho 517, 96 P.3d 618 (2004), an employee was entitled to receive "enhanced severance benefits" upon termination if she signed a release which released her employer "from any and all claims of any kind relating to or arising out of [her] employment or termination of that employment." *Id*. at 521, 96 P.3d at 622. This Court held that the "enhanced severance benefits" received by the employee did not constitute "severance pay" in the sense of "'[a] sum of money usually based on length of employment for which an employee is eligible upon termination.'" *Id*. at 520, 522, 96 P.3d at

4

621, 623. Rather, her "consideration for the agreement was not services but the release of any claim that she might have against [her employer] relating to her employment or termination." *Id.* at 522, 96 P.3d at 623. In this case, it is clear that the "severance payment" was a payment in exchange for the Plaintiff's release of all claims she may have against the City.

Both the Plaintiff and the former mayor submitted affidavits asserting that the Plaintiff did not intend to prospectively waive any claims under the IPPEA and that the Supplemental Agreement reserved her right to proceed on any claims she did not intend to waive when she signed the Employment Agreement. In making this argument, the Plaintiff relies upon the provision in the Supplemental Agreement stating that she "release[s] the City Of Sun Valley for any claims defined in Section 3.A. of the City Administrator Employment Agreement as were intended when the City Administrator Employment Agreement was entered into on June 1, 2008." She also offered other extrinsic evidence to support her contention regarding the scope of the release.

When the contract is unambiguous, "the meaning of the contract and intent of the parties must be determined from the plain meaning of the contract's own words." *City of Idaho Falls*, 126 Idaho at 607, 888 P.2d at 386. The Employment Agreement states that severance payment is Plaintiff's "sole exclusive remedy for any and all claims for damages of any kind arising from a termination without cause" and that "receipt of the severance payment is subject to execution of a release of all claims against the City of Sun Valley." The Employment Agreement did not exclude claims under the IPPEA or any other claims. The words "all claims" mean just that.

The district court held that such extrinsic evidence was inadmissible to contradict, vary, alter, add to, or detract from the terms of the parties' contract under the parol evidence rule. "Under the parol evidence rule, if the written agreement is complete on its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract." *Lindberg v. Roseth*, 137 Idaho 222, 228, 46 P.3d 518, 524 (2002). The Plaintiff has not challenged on appeal the district court's ruling that such extrinsic evidence was barred by the parol evidence rule. Therefore, we affirm it. *Two Jinn, Inc. v. Dist. Court of the Fourth Judicial Dist.*, 150 Idaho 647, 656, 249 P.3d 840, 849 (2011).

The Plaintiff contends that Section 3.A. of the Employment Agreement should be reformed under the doctrine of mutual mistake to express the intent of her and the former mayor

that the release would not include statutory claims, such as the one brought in this case. That claim was not brought in the district court, and it cannot be raised for the first time on appeal. *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 812, 252 P.3d 71, 93 (2011).

The Plaintiff asserts that the "provisions of the Employment Agreement, which purport to prospectively waive [her] statutory IPPEA claims are void as against public policy." We need not address that issue because the waiver at issue in this case is not a prospective waiver. The Plaintiff entered into the Supplemental Agreement after she was terminated. In the Supplemental Agreement, she agreed to "release the City Of Sun Valley for any claims defined in Section 3.A. of the City Administrator Employment Agreement." "A release is a complete abandonment of the cause of action." *Holve v. Draper*, 95 Idaho 193, 195, 505 P.2d 1265, 1267 (1973). Because "(t)here is an obvious public policy favoring the amicable settlement of litigation, . . . agreements accomplishing this result will be disregarded only for the strongest of reasons." *Lomas & Nettleton Co. v. Tiger Enterprises, Inc.*, 99 Idaho 539, 542, 585 P.2d 949, 952 (1978). The release here does not violate any public policy.

The Plaintiff claims that she was not terminated "without cause," but was in reality terminated "for cause." The district court held that any such assertion was barred by judicial estoppel. The court reasoned that "Plaintiff accepted a substantial benefit based on the fact that she was supposedly terminated 'without cause,' and this Court declines to allow her to now assume an inconsistent position." Even though the district court raised the issue of judicial estoppel in connection with the City's motion for summary judgment, the application of that doctrine is properly reviewed under the abuse of discretion standard, not the summary judgment standard. *McCallister v. Dixon*, 154 Idaho 891, 894, 303 P.3d 578, 581 (2013).

> The doctrine of judicial estoppel sounds in equity and is invoked at the discretion of the court. A reviewing court will examine an alleged abuse of discretion based on "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason."

*Id*. (citations omitted).

The Plaintiff did not mention the standard for showing an abuse of discretion, or even allege an abuse of discretion; she did not mention or discuss the district court's analysis in determining that she was judicially estopped; and she did not cite any authority showing that the

6

district court's analysis was an abuse of discretion. Therefore, she has waived this issue on appeal. *Mueller v. Hill*, 158 Idaho 208, 216, 345 P.3d 998, 1006 (2015). We do note, however, that Section 3.A. states that "*receipt* of the severance payment is subject to execution of a release of all claims against the City of Sun Valley." (Emphasis added.)

Finally, the Plaintiff maintains that even if she "waived any claims which occurred ***prior to*** her termination, pursuant to the IPPEA, she is entitled to pursue claims against Sun Valley for its adverse actions ***after her termination***." Under the IPPEA, "adverse action" means "to discharge, threaten or otherwise discriminate against an *employee* in any manner that affects the employee's employment, including compensation, terms, conditions, location, rights, immunities, promotions or privileges." I.C. § 6-2103(1) (emphasis added). After she was terminated, the Plaintiff was no longer an employee, and so the IPPEA did not apply to allegations of wrongful conduct occurring after her termination.

### III.

### Did the District Court Err in Holding that the IPPEA Did Not Provide a Cause of Action Against City Officials?

The defendants Nils Ribi and DeWayne Briscoe were City officials who voted in favor of the termination of the Plaintiff. Mr. Ribi was a member of the city council and Mr. Briscoe was the mayor. They moved to dismiss the amended complaint as to them on the ground that the amended complaint did not state a cause of action against them because the IPPEA did not provide for individual liability. After the motion was briefed and argued, the district court issued a decision agreeing. The Plaintiff contends that the district court erred in holding that the IPPEA did not provide for individual liability.

In statements before a legislative committee, the author of the IPPEA stated that the language in the bill was derived from the federal law and several state laws. It is obvious that at least some of the legislation was taken from legislation in some other jurisdiction. The definitions set forth in Idaho Code section 6-2103 include a definition for the term "public body,"[1] but that term appears nowhere else in the legislation.

---

[1] The statute provides:

"Public body" means any of the following:

The interpretation of a statute is a question of law over which we exercise free review. *City of Pocatello v. Idaho*, 152 Idaho 830, 838, 275 P.3d 845, 853 (2012). It must begin with the literal words of the statute, giving them their plain, obvious, and rational meaning, *Thomson v. City of Lewiston*, 137 Idaho 473, 478, 50 P.3d 488, 493 (2002); those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole, *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). If the statute is not ambiguous, we do not construe it, but simply follow the law as written. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). "A statute is ambiguous where the language is capable of more than one reasonable construction." *Inama v. Boise County ex rel. Bd. of Comm'rs*, 138 Idaho 324, 329, 63 P.3d 450, 455 (2003). If the statute is ambiguous, then it must be construed to mean what the legislature intended for it to mean. *Miller v. State*, 110 Idaho 298, 299, 715 P.2d 968, 969 (1986). To determine that intent, we examine not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history. *Lopez v. State, Indus. Special Indem. Fund*, 136 Idaho 174, 178, 30 P.3d 952, 956 (2001).

The Plaintiff points to two provisions in the legislation in support of her argument that it imposes individual liability. First, she contends that the definition of "public body" includes "any member or employee" of a "council." She contends that all of the entities and individuals included in the definition of "public body" were intended by the legislature to be included within the definition of "employer." That construction is not supported by the wording of the statute. It

---

(a) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, educational institution or any other body in the executive branch of state government;

(b) An agency, board, commission, council, institution member or employee of the legislative branch of state government;

(c) A county, city, town, regional governing body, council, school district, special district, municipal corporation, other political subdivision, board, department, commission, council, agency or any member or employee of them;

(d) Any other body that is created by state or local authority, or any member or employee of that body;

(e) A law enforcement agency or any member or employee of a law enforcement agency; and

(f) The judiciary and any member or employee of the judiciary.

I.C. § 6-2103(5).

8

provides separate definitions for "employer" and "public body," and the words "public body" are not included in the definition of the word "employer."[2]

Second, the Plaintiff points to a provision stating, "An action begun under this section may be brought in the district court for the county where the alleged violation occurred, the county where the complainant resides, or the county where *the person against whom the civil complaint is filed* resides or has his principal place of business." I.C. § 6-2105(3) (emphasis added). However, if the legislature had intended to create individual supervisor liability, it would have done so more explicitly.

As is implicit in the Plaintiff's argument, the legislation must be construed as a whole. In doing so, we conclude that the legislation is ambiguous.

There are provisions in the legislation which, viewed in isolation, could support the contention that the IPPEA provides for individual liability. In addition to Idaho Code section 6-2105(3) quoted above, the definition of "employer" includes "an agent of an employer." I.C. § 6-2103(4)(b). However, the majority of courts which have construed that language have concluded that it does not create individual liability, but makes it clear that the governmental entity is liable for the actions of its agents.

In *Cabinet for Families & Children v. Cummings*, 163 S.W.3d 425 (Ky. 2005), the court had to determine whether the Kentucky Whistleblower Act, which defined "employer" to include "*any person authorized to act on behalf of the Commonwealth, or any of its political subdivisions*, with respect to formulation of policy or the supervision, in a managerial capacity, of subordinate employees," created individual liability. *Id*. at 430. In deciding that the language did not create individual liability, the court stated:

> In interpreting similar definitions of "employer" contained in parallel federal acts and whistleblower acts of other states, "a majority of circuits have found *no* individual liability." In fact, "a growing consensus exists among the courts" that "the 'agent' language is used to incorporate the theory of respondeat superior, 'rather than [to] expose either supervisors or co-workers to personal liability in employment discrimination cases.' "

---

[2] The word "employer" is defined as follows:

> (4) (a) "Employer" means the state of Idaho, or any political subdivision or governmental entity eligible to participate in the public employees retirement system, chapter 13, title 59, Idaho Code;
> (b) "Employer" includes an agent of an employer.

I.C. § 6-2103(4).

*Id*. at 431−32 (citations omitted).

In *Flores v. Herrera*, No. S-1-SC-35286, 2016 WL 4409940 (N.M. Aug. 18, 2016), the issue was whether the New Mexico Whistleblower Protection Act created individual liability based upon its definition of "public employer" that included "'every office or officer' of any entity of state government." *Id*. at *4. In holding that it did not, the court stated: "Those persons who occupy the offices of state government clearly do not act in their individual capacities when they take actions affecting the employment of public employees. When a state officer acts as a 'public employer,' he or she acts in an official capacity." *Id*. The court reasoned that had the legislature intended to create individual liability, it would have done so explicitly. *Id*.

In *De Armas v. Ross*, 680 So. 2d 1130 (Fla. Dist. Ct. App. 1996), the court was asked to decide whether the Florida Whistle-Blower's Act created individual liability where the word "agency" was defined to include "any state, regional, county, local, or municipal government entity, whether executive, judicial, or legislative; any *official*, *officer*, department, division, bureau, commission, authority, or political subdivision therein." *Id*. at 1131. The court held that it did not create individual liability because "subsection (9) makes it clear that the relief afforded under the Act is against the entity that the official represents or of which he or she is the head." *Id*. (footnote omitted). The relief afforded was: (a) reinstatement to the same or an equivalent position or reasonable front pay, (b) reinstatement of fringe benefits and seniority rights, (c) lost wages, benefits, or other lost remuneration, (d) reasonable costs and attorney fees, (e) an injunction, and (f) temporary reinstatement to the same or equivalent position, pending the final outcome of the complaint. *Id*. n.2.

In this case the district court based its decision upon the "numerous courts around the country, when analyzing similar statutes, [that] have come to the conclusion that the 'agent' language is only intended to hold employers liable and not supervisory employees, most citing *respondeat superior* liability as the reason for the inclusion of the word 'agent.'" The court also noted that "[o]nly the State of Idaho, or another governmental entity, not an individual, could provide much of the relief prescribed by the statute, further illustrating that the Idaho legislature did not intend to have supervisory employees be part of the definition of 'employer.'" The relief

available to an employee under the IPPEA is set forth in Idaho Code section 6-2106, which provides:

> A court, in rendering a judgment brought under this chapter, may order any or all of the following:
> (1)  An injunction to restrain continued violation of the provisions of this act;
> (2)  The reinstatement of the employee to the same position held before the adverse action, or to an equivalent position;
> (3)  The reinstatement of full fringe benefits and seniority rights;
> (4)  The compensation for lost wages, benefits and other remuneration;
> (5)  The payment by the employer of reasonable costs and attorneys' fees;
> (6)  An assessment of a civil fine of not more than five hundred dollars ($500), which shall be submitted to the state treasurer for deposit in the general fund.

An individual could not provide reinstatement to the same position and with full fringe benefits and seniority rights.

The provisions of the IPPEA for awarding attorney fees and costs also indicate that, by defining the word "employer" to include the employer's agent, the legislature did not intend to impose individual liability on the agent. If the intent was to impose individual liability on the agent, the agent may be required to pay the employee's costs and attorney fees if the employee prevailed, I.C. § 6-2106(5), but if the agent prevailed the court could award the agent costs and attorney fees only if it found that the employee brought the action without a reasonable basis in law or fact, I.C. § 6-2107. There would be no logical reason to tip the scales against an agent in that manner.

There is another factor indicating that the legislature did not intend to create individual liability. In 1971, the legislature adopted the Idaho Tort Claims Act. Ch. 150, 1971 Idaho Sess. Laws 743. With some exceptions, the Act provided for tort liability for a governmental entity— "Except as otherwise provided in this act, every governmental entity is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." Ch. 150, § 3, 1971 Idaho Sess. Laws 743, 745. The Act did not require the governmental entity to provide a defense for its employee or to indemnify the employee, but it did provide that "[r]ecovery against a governmental entity under the provisions of this act shall constitute a complete bar to any action by the claimant, by reason

of the same subject matter, against the employee whose negligence or wrongful act or omission gave rise to the claim." *Id*. § 17 at 747.

In 1976, the legislature substantially amended the Act. Ch. 309, 1976 Idaho Sess. Laws 1062. The legislation provided that, as a general rule, the governmental entity was required to defend and indemnify its employees for torts committed within the course and scope of their employment. The applicable provisions of the 1976 legislation were as follows:

> (b) A governmental entity shall provide a defense to its employee and be responsible for the payment of any judgment on any claim or civil lawsuit against an employee for money damages arising out of any act or omission within the course or scope of his employment . . . .
>
> (c) . . . . The governmental entity may refuse a defense or disavow and refuse to pay any judgment for its employee at any time if it determines that the act or omission of the employee was not within the course or scope of his employment or included malice or criminal intent.
>
> (d) A governmental entity shall not be entitled to contribution or indemnification, or reimbursement for legal fees and expenses from its employee unless a court shall find that the act or omission of the employee was outside the course and scope of his employment or included malice or criminal intent. . . .
>
> (e) For the purposes of this act and not otherwise, it shall be a rebuttable presumption that any act or omission by an employee within the time and place of his employment is within the course and scope of his employment and without malice or criminal intent.

*Id*. § 4 at 1064–65.

Of significance is the reason for the 1976 legislation—the negative impact upon the employees' performance of their duties when they were exposed to lawsuits for the performance of those duties. Section 1 of the legislation stated:

> The legislature of the state of Idaho hereby finds and declares that exposure of public employees to claims and civil lawsuits for acts or omissions within the course and scope of their employment has a chilling effect upon the performance of their employment duties and is an obstacle to the discharge of public business. It is the declared intention of the state of Idaho to relieve public employees from all necessary legal fees and expenses and judgments arising from such claims and civil lawsuits unless the act or omission complained of includes malice or criminal intent. The legislature further declares that the expenditures of public moneys to this end is for a public purpose.

*Id.* § 1 at 1062–63.

The IPPEA was enacted in 1994. Ch. 100, 1994 Idaho Sess. Laws 226. There is no reason to believe that imposing individual liability on public employees under the IPPEA would

12

not have a similar negative impact on the performance of their duties. They would be required to pay the costs of defending themselves, even if they prevailed in the lawsuit, and they would risk tort liability for actions taken in the performance of their duties. Considering the purpose behind the 1976 amendment to the Idaho Tort Claims Act, if the legislature wanted to impose individual liability under the IPPEA without the protections provided to employees under the Idaho Tort Claims Act, it would have expressly provided for such liability. It did not do so. For the above reasons, we hold that the IPPEA does not create individual liability for an agent of the employer.

## IV.

### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

The Plaintiff seeks an award of attorney fees on appeal under Idaho Code section 6-2106(5). Because the Plaintiff is not the prevailing party, she is not entitled to an award of attorney fees.

The Defendants seek an award of attorney fees on appeal under Idaho Code §§ 6-2107, 12-117, 12-120, and 12-121. These statutes will be addressed separately.

With respect to the City, it seeks attorney fees under Idaho Code sections 6-2107 and 12-117. Idaho Code section 6-2107 is the exclusive statute for awarding attorney fees in actions brought under the IPPEA. *See Block v. City of Lewiston*, 156 Idaho 484, 490, 328 P.3d 464, 470 (2014) (in an action brought under the Idaho Tort Claims Act, the statutory provision for awarding attorney fees under that Act is applicable and not Idaho Code section 12-117). Idaho Code section 6-2107 provides, "A court may also order that reasonable attorneys' fees and court costs be awarded to an employer if the court determines that an action brought by an employee under this chapter is without basis in law or in fact." The Plaintiff's action against the City was brought without a reasonable basis in law or fact because she had clearly and unequivocally released her claim against the City. Therefore, the City is entitled to an award of attorney fees on appeal for defending the claim against it.

With respect to the individual Defendants, they seek an award of attorney fees under Idaho Code section 12-120 and 12-121. With respect to section 12-120, the individual Defendants do not cite the provision in the statute upon which they base their claim. "A general assertion to an award of attorney fees under Idaho Code section 12-120 is insufficient to request attorney fees on appeal, where the specific portion of the statute relied upon is not identified and,

13

if necessary, supported by argument as to why it is applicable." *Armand v. Opportunity Mgmt. Co.*, 155 Idaho 592, 602, 315 P.3d 245, 255 (2013).  With respect to section 12-121, until March 1, 2017, the standard for awarding attorney fees on appeal under that statute is that the appeal was brought or pursued frivolously, unreasonably, or without foundation.  *Shepherd v. Shepherd*, ____ Idaho ____, 383 P.3d 693, 700 (2016).  Because we had not addressed the issue of whether the IPPEA provides for individual liability and the statute is ambiguous on that issue, the appeal on that issue was not brought or pursued frivolously, unreasonably, or without foundation.  Therefore, the individual Defendants are not entitled to an award of attorney fees under that statute.

## V.
## Conclusion.

We affirm the judgment of the district court, we award the Respondents costs on appeal, and we award the City attorney fees on appeal for defending the appeal against it.

Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**