96 P.3d 618

Mary K. PARKER, Claimant–Appellant,

v.

UNDERWRITERS LABORATORIES, INC., Employer, and State of Idaho, Department of Labor, Defendants–Respondents.

No. 29424.

Supreme Court of Idaho, Boise, April 2004 Term.

July 9, 2004.

**518**

John Patrick Whelan, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent State of Idaho, Department of Labor. Evelyn Thomas argued.

SCHROEDER, Justice.

This is an appeal from the Industrial Commission's (Commission) order affirming the appeals examiner's determination that Mary K. Parker (Parker) was ineligible for a waiver of repayment of unemployment benefits pursuant to I.C. § 72–1369.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 2001, Parker was terminated after twenty-four years of employment with Underwriters Laboratories, Inc. (Underwriters) due to corporate restructuring. She was informed that she would receive salary and vacation compensation until the date of termination and would qualify for unemployment benefits. She was also informed that she would be eligible for a "severance package" only if she agreed to sign a release agreement, which would release Underwriters from all claims relating to her employment or subsequent termination. Parker signed the release agreement on August 8, 2001.

On August 31, 2001, Parker submitted a claim for unemployment benefits with the Department of Labor (Department). Question three of the claim form asked whether the applicant "[w]ill receive vacation, holiday, bonus or severance pay this week or in the future." Parker checked the "yes" box adjacent to this question and circled the word "severance."

From September 2001 through August 2002 Parker received unemployment benefits in the amount of $315 per week. During this time she also received bimonthly "severance" payments in the amount of $1,922.50 pursuant to her release agreement with Underwriters. Each week Parker placed calls to the Department's Tel–A–Claim system and answered prerecorded questions regarding her eligibility for unemployment benefits. She was required to report the amount of any severance payment that she received. She did not report any of the payments she received from Underwriters.

A Department claims investigator investigated Parker's claim based on the results of a Department cross-match audit which matches the wages reported by employers on

their quarterly wage reports against claim reports filed by recipients of unemployment benefits. The Department sent a weekly earnings request form to Parker's former employer, Underwriters, asking it to verify whether or not Parker earned wages from September 1, 2001, through August 27, 2002. The form stated that if any of the gross wages were other than regular pay, the payment was to be designated according to the following codes in the space provided: (1) H—Holiday, (2) V—Vacation, (3) S—Severance or bonus, (4) G—Gratuities or tips, or (5) O—Other. On August 27, 2002, a payroll supervisor employed by Underwriters reported that Parker earned a weekly severance payment in the amount of $887.31 during the relevant time frame.

In a letter dated September 30, 2002, the Department claims investigator informed Parker regarding the differences between the amounts Parker reported to the Department and those reported by Underwriters. The letter contained an itemized list of the discrepancies and requested a response no later than October 7, 2002.

Parker responded, explaining that when she initially applied for unemployment benefits she informed the receptionist concerning her severance benefits, and thus, she believed the relevant information was already in the Department's records. According to Parker, she "never reported weekly any changes because nothing had changed."

On the same day Parker's letter was received, the Department issued an eligibility determination that Parker (1) failed to disclose her severance pay on her claim and (2) failed to respond to a request for information regarding these discrepancies. The Department concluded that Parker "willfully made a false statement or failed to report a material fact on [her] claim." Consequently, pursuant to I.C. § 72–1366(12),[1] Parker was found ineligible for benefits prospectively effective October 6, 2002, through October 4, 2003, as

well as retroactively, effective August 26, 2001, through October 6, 2001, October 14, 2001, through March 9, 2002, April 21, 2002, through June 8, 2002, and June 16, 2002, through July 27, 2002, for failing to disclose severance pay on her claim. Parker subsequently received an explanation of improper payment worksheet which listed the total amount of overpayment due as $12,285.

Parker requested an appeals hearing to protest the Department's eligibility determination. The appeals examiner conducted a telephonic hearing and made the following findings of fact:

1. The claimant was paid severance payments beginning August 15, 2001 and ending August 15, 2002. The claimant failed to report any of the severance payments when she called in on the Tel–A–Claim system.

2. The claimant indicated in her initial written response to the Idaho Department of Labor that she did not provide information about the severance payments because she discussed the severance payments with a person at the Job Service office when she filed her unemployment insurance claim, and she believed that the Department of Labor had the information in its records.

3. The claimant also maintains that the payments that the claimant received were not severance benefits but were paid to the claimant to resolve any outstanding claims she might have against her former employer.

4. The claimant's reported income to the Department of Labor and the severance payments made to the claimant [show an overpayment of $12,285.00].

Based on these findings, the appeals examiner concluded that Parker "did willfully make false statements or representations or willingly failed to report material facts in

1. I.C. § 72–1366(12) provides:

A claimant shall not be entitled to benefits for a period of fifty-two (52) weeks if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits. The period of disqualification shall commence the week the

determination is issued. The claimant shall also be ineligible for waiting week credit and shall repay any sums received for a week in which the claimant willfully made a false statement or willfully failed to report a material fact.

order to obtain unemployment insurance benefits." The appeals examiner affirmed the Department's eligibility determination. Additionally, the appeals examiner found that Parker was not entitled to a waiver of repayment of unemployment benefits pursuant to I.C. § 72–1369(1)(d) because she was paid benefits as a result of inaccurate information provided to the Department, rather than due to error on the part of the Department.

Parker appealed the decision of the appeals examiner to the Industrial Commission (Commission) which affirmed the appeals examiner's decision in part and reversed in part. The Commission reversed the appeals examiner's determination that Parker willfully misrepresented a material fact for the purpose of obtaining unemployment benefits when she failed to report her severance payments. However, the Commission affirmed the appeals examiner's determination that Parker was ineligible for a waiver of the repayment requirement under I.C. § 72–1369(1)(d). Thus, Parker was ordered to repay the $12,285 in unemployment benefits she received.

Parker appealed to this Court.

## II.

### STANDARD OR REVIEW

■ When reviewing a decision of the Commission, this Court will not disturb the factual findings if they are supported by substantial and competent evidence. *Laundry v. Franciscan Health Care Ctr.*, 125 Idaho 279, 281, 869 P.2d 1374, 1376 (1994). Substantial and competent evidence consists of relevant evidence a reasonable mind might accept as adequate to support a conclusion. *Id.* This Court exercises free review over questions of law. *Id.*

## III.

### CONSIDERATION FOR A RELEASE OF LIABILITY IS NOT REPORTABLE "SEVERANCE PAY."

■ Parker claims that the payments she received pursuant to her agreement with Underwriters do not fall within the definition of reportable "severance pay" since the primary purpose of the agreement was to obtain her release of all claims against Underwriters relating to her employment or termination.

■ The Idaho Administrative Code provides that "[a]n equal portion of a periodic severance payment must be reported in each week of the period covered by the payment." IDAPA 09.01.30.525.11. The phrase "severance pay" is not defined. The principles of statutory construction apply equally to administrative regulations. *Rhodes v. Industrial Comm'n*, 125 Idaho 139, 142, 868 P.2d 467, 470 (1993). Where statutes are ambiguous the Court employs relevant rules of statutory construction, beginning with the literal words of the statute, giving the language of the statute its plain, obvious, and rational meanings. *Wolfe v. Farm Bureau Ins. Serv. Co.*, 128 Idaho 398, 404, 913 P.2d 1168, 1174 (1996). "Severance pay" has been defined as "[a] sum of money usually based on length of employment for which an employee is eligible upon termination." The American Heritage Dictionary Of The English Language (4th ed.2000). "The purpose of a severance plan is to protect employees from economic hardship and to reward them for past service to the company." 27 Am.Jur.2d *Employment Relationship* § 70 (1996).

In *Moore v. Digital Equip. Corp.*, 868 P.2d 1170 (Colo.Ct.App.1994), superseded by statute as stated in *Pero v. Indust. Claim Appeals Office of the State*, 46 P.3d 484 (Colo.Ct.App.2002), the court held that a lump sum payment did not constitute severance allowance where it was made in consideration of an individual's execution of a written release of claims against a former employer. The court explained its reasoning as follows:

> Here, the written agreement between the parties demonstrates that the employer's primary purpose in making a lump sum payment was, as the referee found, *not* to provide a salary substitute to secure the employee's economic well-being during any period of unemployment. While there is self-serving language to this effect in the agreement that was unilaterally prepared by the employer, had this been the employer's primary purpose for the payment,

it would not have been conditioned on the employee's execution of the written release.

Further, a severance allowance is a payment made to an employee in return for services previously provided. Hence, payment made by an employer to settle a claim asserted by an employee, even though paid on a weekly basis, is not a payment for services rendered.

*Id.* at 1172–73 (emphasis in original) (internal citations omitted).

The court in *Moore* concluded that, "the consideration received by the employer under the terms of the written agreement was the claimants' release of any claim that they might have either against the employer itself or against described third parties. Hence, the payment to the claimants here was not made in consideration of any prior service rendered by them." *Id.* at 1173.

■ The interpretation and legal effect of a contract are questions of law over which this Court exercises free review. *First Sec. Bank of Idaho v. Murphy,* 131 Idaho 787, 791, 964 P.2d 654, 658 (1998). The goal in interpreting all contracts is to ascertain the mutual intent of the parties at the time their contract was made. *Rutter v. McLaughlin,* 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). The record contains three documents relating to the agreement between Parker and Underwriters: (1) a memo "Re: Severance Benefits"; (2) a "General Release" form; and (3) a "Computation of Enhanced Severance Benefits" form. The memo, which was dated August 7, 2001, explained that, "[t]he primary purpose of this memo ... is to advise [Parker of her] eligibility to receive up to 52 weeks of severance pay and payment of a portion of the premiums for continuation of health and dental insurance, pursuant to the enclosed Severance Program (the "Severance Program")." The memo further provided:

> *To receive the complete package of benefits described in the Severance Program, you must sign and return the enclosed General Release and Computation of Severance Benefits form within 45 days of your receipt of this memo. At your option, you can return the executed documents on an earlier date. Your enhanced benefits will not begin until after you have executed and returned the General Release and related Computation of Enhanced Severance Benefits form.... (Please note that in the event that you decline to participate in the Severance Program, you will receive 2 weeks of severance pay, but you will not be eligible for the enhanced severance benefits or Company payment of any portion of the premiums for continuation of health and/or dental insurance, as described in the Severance Program).*

(emphasis in original).

Parker signed the General Release and Computation of Enhanced Severance Benefits forms on August 8, 2001. The General Release form is a three-page document, which releases Underwriters "from any and all claims of any kind relating to or arising out of [Parker's] employment or termination of that employment with Underwriters Laboratories, Inc. or any of its subsidiaries or affiliates (together, the "Company")." The Computation of Enhanced Severance Benefits form computed a total amount of $46,140.12, which was based in part on Parker's base salary and years of continuous employment with Underwriters. The document provided, however, that "[i]n order to receive these benefits, you are required to sign and return both the General Release and [the Computation of Enhanced Severance Benefits]." The "Employee Acceptance" and signature portion of the Enhanced Severance Benefits form further provides:

> This is to acknowledge that I have elected to receive the Enhanced Severance Pay benefits referenced above. I understand that I am required to sign the General Release as a condition for receipt of these benefits, and the signed General Release accompanies this form.

It is clear from the plain language of the General Release and Computation of Severance Benefits forms that Parker would not receive so-called "enhanced severance benefits" unless she signed the broad release of all claims she might have against Underwriters relating to her employment or termination. Parker would have received only two weeks severance pay if she did not sign the release. She signed the release of all claims and received payments for 52 weeks. While

the amount Parker received from Underwriters was based partly upon her base salary and length of past service, "the payment was in exchange for [her] release of claims—a consideration not due from [Parker as an employee], but one that was entirely separate from and independent of that service." *See Moore*, 868 P.2d at 1173. Parker's consideration for the agreement was not services but the release of any claim that she might have against Underwriters relating to her employment or termination. After the first two weeks, the payments were not "severance pay" within the meaning of IDAPA 09.01.30.525.11. The Commission's decision and order is reversed.

## IV.

## CONCLUSION

The Decision and Order of the Commission is reversed because the payments Parker received from Underwriters after the first two weeks do not fall within the definition of reportable "severance pay." Parker is awarded costs.

Chief Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.