# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46389

STATE OF IDAHO, )
)
    Plaintiff-Appellant, )
)    **Boise, June 2019 Term**
v. )
)    **Filed: September 11, 2019**
CHRISTOPHER NEAL OSBORN, )
)    **Karel A. Lehrman, Clerk**
    Defendant-Respondent. )
_____ )

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Cynthia K.C. Meyer, District Judge.

The decision of the district court is <u>affirmed</u>.

Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Anne Taylor, Kootenai County Public Defender's Office, Coeur d'Alene, for respondent. Amanda R. Montalvo argued.

_____

BRODY, Justice.

This case involves the vexing question of the proper amount of credit for time served to which Christopher Osborn is entitled under Idaho Code section 19-2603, the statute governing rearrest for a probation violation. Osborn violated a no contact order twice, pleaded guilty to the misdemeanor charges, and was given consecutive sentences of 365 days in jail on each count. Both sentences were suspended and he was placed on probation for two years on each count to be served concurrently. He was later arrested for, and admitted to, violating the terms of his probation; he served 106 days in jail from the date of his arrest before admitting the violations. The magistrate court granted Osborn 106 days credit for time served against the first of his consecutive sentences. Osborn then filed a Rule 35 motion seeking credit for time served against both consecutive sentences. The magistrate court denied Osborn's motion. Osborn appealed to the district court, and it reversed the magistrate court's denial and granted Osborn credit for time served against both sentences. We affirm the district court's decision.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

After a domestic violence incident, Christopher Osborn was ordered to have no direct or indirect contact with his girlfriend. Osborn ignored this order and went to his girlfriend's home a month later, taking property, making death threats, and throwing items at her. After police extracted Osborn from a hiding place in the garage, he was charged with two misdemeanor counts of violating the no contact order. Osborn pleaded guilty to both counts and was given consecutive sentences of 365 days jail on each count, the maximum sentences available for those offenses. After giving Osborn credit against each count for time served prior to judgment, the magistrate court suspended 278 days of each sentence and placed Osborn on supervised probation for two years on each count to be served concurrently.

Osborn absconded immediately upon his release from jail. The State filed a motion to revoke probation, alleging Osborn violated the terms of his probation by failing to report to the probation department within three business days of his release and was evading supervision. The State requested that a bench warrant be issued. The State's request was granted and a bench warrant was issued.

A few months later, Osborn was arrested after he was found hiding between a mattress and a box-spring in his girlfriend's home. He had pulled her into the home by her hair and threatened to kill her. Osborn's girlfriend was eventually found unharmed but terrified, hiding amongst insulation in the home's attic. Police charged Osborn with violating the no contact order again, and with kidnapping, and with obstructing an officer. Once in custody on the new charges, Osborn was served with the outstanding bench warrant issued in this case for his alleged probation violations. The State also filed an amended motion to revoke probation which added the allegation that Osborn violated the terms of his probation by committing new offenses.

A little over three months after he was arrested on the new charges, Osborn admitted to violating the terms of his probation in this case. The magistrate court revoked his probation and imposed his previously-suspended consecutive sentences. The magistrate court credited Osborn with 106 days spent in jail from service of the bench warrant until he admitted the probation violations. The magistrate court credited the time against the first count alone, reasoning that the time served was post-sentencing on consecutive counts. Osborn filed a Rule 35 motion asking for additional credit for time served, arguing that he was owed 106 days credit against his second count as well, irrespective of the fact that it was a consecutive sentence. After a hearing on the

matter, the magistrate court denied the motion, stating:

> . . . [M]y interpretation of [State v.] Owens and [Idaho Code section 19-2603] is that after sentencing is imposed—and to the extent it's structured consecutively as it was here—[Osborn is] no longer entitled to having credit on each of the various counts because now the sentences have been structured consecutively, which it was, and he got credit for the time that he was in towards that structured sentence. He doesn't get it twice . . .

Osborn appealed the magistrate court's denial of his Rule 35 motion to the district court.

Upon review, the district court reversed the magistrate court's decision and credited Osborn with 106 days against the sentences for each of the two counts, rather than just the first. The district court determined that the plain language of Idaho Code section 19-2603 and existing case law mandated that "if [a] bench warrant includes more than one offense, then a defendant is entitled to credit served on each offense." It then explained that Osborn's consecutive sentences did not change the analysis:

> In the present case, [Osborn] was taken into custody under a bench warrant based on a probation violation that applied to both charges. The fact that [Osborn's] sentences were imposed to run consecutively is of no moment, because he violated the terms of his probation on both charges. Thus, under the plain language of Idaho Code § 19-2603, [Osborn] is entitled to credit for 106 days against each count, for total credit of 346 days.

The State timely appealed to this Court. We affirm the decision of the district court.

## II. STANDARD OF REVIEW

"The question of whether a sentencing court has properly awarded credit for time served to the facts of a particular case is a question of law, which is subject to free review by the appellate courts." *State v. Gonzalez*, No. 44534, 2019 WL 693765, at *2 (Idaho Feb. 20, 2019) (internal citation omitted). Additionally, "the interpretation of a statute is a question of law over which this Court exercises free review." *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 581, 416 P.3d 951, 953 (2018).

> Our objective when interpreting a statute is "to derive the intent of the legislative body that adopted the act." *Id.* (quoting *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011)). Statutory interpretation begins with the statute's plain language. *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013). This Court considers the statute as a whole, and gives words their plain, usual, and ordinary meanings. *Id.* When the statute's language is unambiguous, the legislature's clearly expressed intent must be given effect, and we do not need to go beyond the statute's plain language to consider other rules of statutory construction. *Id.* at 361–62, 313 P.3d at 17–18.

3

*State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015).

### III.   ANALYSIS

The State contends the district court erred in granting Osborn credit for time served against both of his consecutive sentences. Section 19-2603, the statute at issue, provides in part:

> *The defendant shall receive credit for time served from the date of service of a bench warrant issued by the court after a finding of probable cause to believe the defendant has violated a condition of probation . . . .*

I.C. § 19-2603 (emphasis added). The State asserts this language is plain and unambiguous. Its argument is: "By granting *consecutive* credit for time served against the consecutive sentences the magistrate granted 'credit for time served from the date of service of a bench warrant.' Not giving *concurrent* credit against the consecutive sentences in no way deprived Osborn of 'credit for time served from the date of service of a bench warrant.' *Osborn was serving his consecutive sentences from the moment of his arrest, and was given full credit for that service*." (emphasis added). We disagree with the State's analysis.

It is well understood that statutory interpretation begins with the literal language of the statute. *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011) (citation omitted). A statute must be considered as a whole, and words should be given their plain, usual, and ordinary meanings. *Id.* When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect. *Id.* "If a statute is unsound or the policy behind it unwise, the power to correct the statute rests with the Legislature, not the judiciary." *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017).

Section 19-2603 is the statute that governs the pronouncement and execution of judgment after a probation violation. The statute states:

> When the court finds that the defendant has violated the terms and conditions of probation, it may, if judgment has been withheld, pronounce any judgment which it could originally have pronounced, or, if judgment was originally pronounced but suspended, revoke probation. The time such person shall have been at large under *such suspended sentence* shall not be counted as a part of the term of his *sentence*. The defendant shall receive credit for time served from the date of service of a bench warrant issued by the court after a finding of probable cause to believe the defendant has violated a condition of probation, for any time served following an arrest of the defendant pursuant to section 20-227, Idaho Code, and for any time served as a condition of probation under the withheld judgment or *suspended sentence*.

4

I.C. § 19-2603 (emphasis added). The emphasized language demonstrates that this statute is written in the singular—"suspended sentence". When applied to a case involving multiple suspended sentences, this language requires consideration of each suspended sentence independently of any other suspended sentence. In this case, even though the charges and sentences mirrored each other, Osborn pled guilty to two separate crimes, received two separate sentences, and was serving two separate terms of probation. The district court correctly recognized that the State filed a motion to revoke probation without making any distinction between the two suspended sentences and that Osborn was served with a bench warrant for alleged probation violations associated with each of his sentences. Under the plain language of 19-2603, the district court had to grant credit for time served against each suspended sentence regardless of whether the result was unwise or gave Osborn what the dissent calls a windfall. There simply is no language in the statute allowing the district court to carve out special consideration for the fact that the sentences were to be served consecutively.

The State argues against this result by asserting that Osborn began serving the first of his consecutive sentences at the time of his arrest and that he has been given all the credit he is due. We disagree with the State's premise. Section 20-222 of the Idaho Code authorizes the rearrest of a probationer for an alleged probation violation. The statute makes it clear that after a hearing the trial court can revoke probation and order the execution of the sentence that was originally imposed:

> At any time during probation or suspension of sentence, the court may issue a warrant for violating any of the conditions of probation or suspension of sentence and cause the defendant to be arrested. *Thereupon, the court, after summary hearing may revoke the probation and suspension of sentence and cause the sentence imposed to be executed, or may cause the defendant to be brought before it and may continue or revoke the probation, or may impose any sentence which originally might have been imposed at the time of conviction.*"

I.C. § 20-222. Importantly, under this statute, a suspended sentence is not executed until the court has determined that a probation violation has occurred. Simply stated, Osborn did not begin serving his first suspended sentence when he was rearrested for the alleged probation violations. He did not begin serving his underlying sentences until he admitted the probation violations and the magistrate court revoked probation and imposed the sentences that had been suspended. That occurred 106 days after he was served with the bench warrant. The district court properly

5

credited Osborn with time served against both of his sentences under the plain and unambiguous terms of the statute.

The dissent argues that statutory construction should avoid palpably absurd results, a principle endorsed by some courts to avoid injustice. *See, e.g., Sturges v. Crowninshield*, 17 U.S. 122, 202–03 (1819). However, legal absurdity is not equivalent to undesirable consequences from applying the plain language of a statute.

> But if, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application.

*Id.* Importantly, this Court has never revised or voided an unambiguous statute on the grounds it was patently absurd, nor do we delve into statutory revisions to avoid uncomfortable results. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 895-96, 265 P.3d 502, 508-09 (2011).

> If this Court were to conclude that an unambiguous statute was palpably absurd, how could we construe it to mean something that it did not say? Doing so would simply constitute revising the statute, but we do not have the authority to do that. The legislative power is vested in the senate and house of representatives, Idaho Const. art. III, § 1, not in this Court. As we said in *Berry v. Koehler,* 84 Idaho 170, 177, 369 P.2d 1010, 1013 (1962), "The wisdom, justice, policy, or expediency of a statute are questions for the legislature alone."

*Id.* Even in the cases cited to by the dissent, this Court rejected the absurd readings of statutes in favor of their plain interpretation; neither statute was ambiguous or subject to court revision, nor did the Court's plain reading create absurd results. *See The David & Marvel Benton Tr. v. McCarty*, 161 Idaho 145, 151, 384 P.3d 392, 398 (2016); *State v. McKie*, 163 Idaho 675, 678, 417 P.3d 1001, 1004 (Ct. App. 2018), *review denied* (May 23, 2018).

The dissent also argues that our decision today ignores language in Idaho Code section 20-222(2) which states in part that a trial court: "may impose any sentence which originally might have been imposed at the time of conviction." The dissent argues the magistrate court had the authority to sentence Osborn to two consecutive 365-day sentences, with 106 days suspended, leaving 624 days to serve, and therefore, its calculation of credit for time served was within the boundaries of its discretion. We disagree with the dissent's analysis.

The calculation of credit for time served is not a discretionary matter. When Osborn originally pled guilty to two counts of violating the no contact order, the magistrate court

sentenced him to the maximum sentence of one year in jail on each count. When Osborn admitted violating the terms of probation associated with each conviction, the magistrate court did not re-fashion the sentences. Instead, the magistrate court imposed the sentences that were originally pronounced and gave Osborn credit for time served. The magistrate court's reading of the credit for time served statute was erroneous as a matter of law and the district court corrected the error. The language in section 20-222(2) which the dissent relies upon cannot be used to turn the calculation of credit for time served which is a legal matter into a discretionary one.

On the surface, calculating credit for time served seems like it should be a simple exercise of counting days on a calendar. Its true complexity manifests in the statutory provisions and diverse circumstances presented to the district and magistrate courts on a case-by-case basis. In fact, since our decision in *State v. Owens*, 158 Idaho 1, 343 P.3d 30 (2015), this Court has addressed numerous issues arising from statutes concerning credit for time served. *See Interest of Doe*, 165 Idaho 72, 438 P.3d 769, 776 (2019) (whether Idaho Code sections 18-309 and 19-2603 entitled juveniles sentenced under the Juvenile Corrections Act to credit for time served on the offense at issue when there was an arrest on a probation violation); *State v. Gonzalez*, 165 Idaho 95, 439 P.3d 1267, 1272 (2019), *reh'g denied* (May 17, 2019) (whether a defendant preserved the issue of credit for time served for appeal); *State v. Barrett*, 163 Idaho 449, 452–54, 414 P.3d 1188, 1191–93 (2018) (whether a hold notice service request was equivalent to an arrest warrant for an inmate already incarcerated on an unrelated matter); *State v. Brand*, 162 Idaho 189, 192, 395 P.3d 809, 812 (2017) (whether a party may receive credit for presentence incarceration where that party was already incarcerated due to a prior, unrelated offense); *State v. Young*, 162 Idaho 856, 859, 406 P.3d 868, 871 (2017) (whether section 18-309 authorizes credit for prejudgment time served on each sentence for each count when defendant's sentencing was finalized prior to *Owens*); *State v. Leary*, 160 Idaho 349, 352, 372 P.3d 404, 407 (2016) (whether the amended credit statutes were retroactive); *State v. Taylor*, 160 Idaho 381, 385, 373 P.3d 699, 703 (2016) (whether a defendant was entitled to credit for his incarceration during his participation in drug court).

While today we point to the Legislature's constitutional responsibility for crafting statutes related to credit for time served, the various circumstances that arise when sentencing defendants is difficult to fully contemplate and the task of crafting a comprehensive statute that eliminates all cries of injustice is a tall order. Nevertheless, the statute here lacks language

allowing the district court to carve out special consideration for the fact that Osborn's suspended sentences were to be served consecutively. The plain reading of the statute leads us to only one conclusion: Osborne was entitled credit for time served against each suspended sentence. The fact that we may dislike the result is of no moment. We will not interpret the plain language of a statute simply to reach a more desirable result.

## IV.    CONCLUSION

In light of the foregoing, the decision of the district court is affirmed.


Chief Justice BURDICK and Justice STEGNER CONCUR.


MOELLER, Justice, dissenting.

I respectfully dissent from the majority's well-reasoned opinion. Although I concede that its conclusions are based on a careful and thoughtful reading of the statutes involved, the resulting outcome is far from what I believe the legislature intended and will lead to absurd and potentially dangerous results that I cannot support.

## I.    BACKGROUND

Osborn was originally sentenced to two consecutive 365-day terms for twice violating a no-contact order issued against him. The victim was the same in both cases. The consecutive sentences not only reveal the magistrate judge's determination to punish Osborn for twice violating a no-contact order, but also demonstrate the judge's desire to protect the victim and the public in general. Nevertheless, the judge suspended the sentences and placed Osborn on probation, with two years of jail time hanging over his head. Unfortunately, Osborn immediately absconded, spending months on the lam. He was eventually apprehended while hiding under a bed in the home of the same victim the original no-contact order had intended to protect, but only after he had brutalized and terrorized her. He was charged with kidnapping, violating the no-contact order, and obstructing an officer.

Although there was an unusually lengthy delay from the time of his arrest to disposition of the probation violations (106 days), this was certainly the result of Osborn not wishing to admit the violations while additional criminal charges were pending related to his new offenses against the victim. Given the severe consequences a defendant may face if convicted of new crimes while serving probation for previous offenses, postponing an admission to a probation

violation is a common and reasonable tactic by defense attorneys in order to preserve their clients' legal options and constitutional rights. After Osborn admitted the probation violations, he was sentenced to serve the two consecutive 365-day sentences that had been suspended with full credit for the 106 days he had spent in custody. In other words, Osborn received the same sentence the judge told him he would receive if he failed to successfully complete probation.

## II.    ANALYSIS

Notwithstanding this troubling history, the majority's reading of the statutes in question now results in an undeserved windfall for Osborn, granting him double credit for his time served while he was deciding whether to admit the violations and waiting for disposition. In essence, the majority's ruling grants Osborn double credit (212 days) for the time he actually served (only 106 days)—a result that I believe is neither required by the law nor intended by the legislature. The majority's interpretation further leads to the inescapable conclusion that, had Osborn waited 365 days to admit the violations, his two-year sentence would have been completed after serving only one-half of his original sentence.

### A.    The statutes at issue do not compel the majority's outcome.

We begin with the undisputed premise that Idaho Code section 19-2603 requires that a defendant on probation receive full credit for the time they served in custody:

> The defendant shall receive credit for time served from the date of service of a bench warrant issued by the court after a finding of probable cause to believe the defendant has violated a condition of probation, *for any time served* following an arrest of the defendant pursuant to section 20-227, Idaho Code, and *for any time served* as a condition of probation under the withheld judgment or suspended sentence.

(Emphasis added). The majority reads this language as granting a defendant credit for time served on *each* count, even if the sentence was made consecutive by the sentencing judge. Unlike the majority, I read the plain language of section 19-2603 as only awarding credit for the time the defendant *actually* served in custody; it does not appear to support any inference that a defendant should receive additional credit on a consecutive sentence for hypothetical time not actually served.

The source of the confusion in this case is rooted in Idaho Code section 20-222(2). This statute sets forth the options a sentencing judge has if the defendant admits to or is found to have violated the terms of probation:

9

> At any time during probation or suspension of sentence, the court may issue a warrant for violating any of the conditions of probation or suspension of sentence and cause the defendant to be arrested. *Thereupon the court, after summary hearing may revoke the probation and suspension of sentence and cause the sentence imposed to be executed,* or may cause the defendant to be brought before it and may continue or revoke the probation*, or may impose any sentence which originally might have been imposed at the time of conviction.* In making a determination to continue or revoke probation and suspension of sentence, the court shall consider the defendant's risks and needs and options for treatment in the community.

I.C. § 20-222(2) (emphasis added). The majority focuses its analysis on the italicized language cited above, stopping its analysis at the phrase: "and cause the sentence imposed to be executed." However, it does not read it in concert with the underscored phrase, "or may impose any sentence which originally might have been imposed at the time of conviction." The majority further concludes that "a suspended sentence is not executed until the court has determined that a probation violation has occurred."[1] Therefore, the majority reasons that Osborn should receive credit for time served on both charges *cumulatively* pursuant to section 20-222(2), thereby effectively turning Osborn's 106 days in custody into 212 days.

My concern with such a reading of these statutes is that it essentially disregards the trial judge's original sentence and permits the defendant to alter the time he must serve based on how long he waits to admit a probation violation. In other words, every day that Osborn remained in custody he would essentially be doubling his credit for time served. Of similar concern is that this interpretation leaves it to a prosecuting attorney (perhaps unwittingly) to determine the time a defendant will actually serve based on the manner in which the probation violation is filed. For example, under the majority's analysis, had the State only charged Osborn with a probation violation on the first case of violating the no-contact order, waited for an admission and disposition, and then charged Osborn with a second probation violation for the second case of violating the no-contact order, the Court would have been free to credit Osborn with only 106 days. Under this scenario, Osborn would only be entitled to additional credit for whatever actual time he served between the second probation violation being filed and its disposition. Such a procedure would not only be burdensome on the legal resources of the court, the State, and the defense—essentially doubling the number of court appearances necessary to adjudicate the

---

[1] Under the majority's logic, even an admission to a probation violation may not result in an "executed" sentence because the sentencing judge still has the option to again suspend the sentence and return the defendant to probation.

probation violations—it is clearly inconsistent with the intent of the legislature. Also problematic is that this interpretation potentially empowers the State to dictate the amount of credit a defendant receives for violating probation based on the manner and timing of the filing of the probation violations, usurping what has historically and constitutionally been the province of the sentencing judge.

The majority's reading of these statutes also fails to place sufficient weight on the underscored portion of the quote from section 20-222(2), *supra*, which reads: "or may impose any sentence which originally might have been imposed at the time of conviction."[2] This phrase has existed in section 20-222 and its earlier incarnations dating back to 1947. I believe this phrase is important because it permits the sentencing judge to adjust the sentence following a probation violation, consistent with the statutory discretion the judge had at the time of sentencing. I do not read this to mean that the sentencing judge may arbitrarily increase a defendant's sentence after a probation violation. Of course, that is not what occurred here. Rather, at the probation disposition hearing, the magistrate judge imposed Osborn's original sentence of two consecutive 365-day sentences and ordered that Osborn be given credit for the time he had already served—106 days. Such a sentence was consistent with the magistrate judge's discretion at the original sentencing. Therefore, the sentence Osborn actually received as a result of his probation violation is completely consistent with the sentence that "might have been imposed at the time of conviction," *i.e.*, two consecutive 365-day sentences, with 106 days suspended, leaving 624 days to serve.[3]

**B.      Legislative intent supports a different outcome.**

In interpreting Idaho Code sections 19-2603 and 20-222(2), the majority has taken a textualist approach and applied the plain meaning it infers from the statutes as written. I concede that this is typically the proper and preferred method of statutory construction—and one to which I regularly adhere. However, when the plain meaning of a statute is (1) not clear from the text, (2) conflicts with other related provisions in the code, (3) renders a result that makes no sense, or

---

[2] I am mindful that section 19-2603 contains similar language but limits its application to cases where an order withholding judgment has been granted: "if judgment has been withheld, pronounce any judgment which it could originally have pronounced."

[3] Although our decision in *State v. Owens*, 158 Idaho 1, 4, 343 P.3d 30, 33 (2015), might suggest that credit for time served should be applied to each count, *Owens* concerned Idaho code section 18–309, which expressly applies to time served "prior to entry of judgment." This is a reasonable distinction given that prior to judgment it would not have been determined which sentences a defendant would be convicted of, or whether the defendant's sentence would be concurrent or consecutive.

11

(4) is unconstitutional, it is proper to look at the legislative purpose behind the statute in order to fully understand its meaning. These statutes suffer from all four problems noted above.

We have previously recognized that the rules for interpreting an ambiguous statute go beyond strict textualism. As we recently explained:

> If the statutory language is unambiguous, we merely apply the statute as written. If the statute is ambiguous, then we seek to determine the legislative intent. When doing so, we may examine the language used, the reasonableness of proposed interpretations, and the policy behind the statute. Interpretation begins with the literal language of a statute.

*Moser v. Rosauers Supermarkets, Inc.*, 443 P.3d 147, 150 (Idaho 2019) (citations omitted). "[A] statute is ambiguous where the language is capable of more than one reasonable construction." *State v. Amstad*, 164 Idaho 403, 405, 431 P.3d 238, 240 (2018). Additionally, when statutes relate to the same subject, they are considered *in pari materia*. *See Saint Alphonsus Reg'l Med. Ctr. v. Elmore Cty.*, 158 Idaho 648, 653, 350 P.3d 1025, 1030 (2015).

> Such statutes are taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions.

*Meyers v. City of Idaho Falls*, 52 Idaho 81, 11 P.2d 626, 629 (1932).

Even if the majority's interpretation of these statutes were deemed a "reasonable construction," the literal language of the statutes still creates an ambiguity in the meanings of sections 19-2603 and 20-222 because neither statute addresses consecutive sentences. Furthermore, the Majority does not address the residual authority granted to the sentencing judge to impose any sentence that could have originally been imposed, effectively rendering this provision meaningless. Additionally, as explained earlier, the majority's reading of these statutes could result in a violation of separations of powers principles by allowing a prosecutor to usurp the sentencing judge's discretion by altering the ultimate sentence based on the timing and manner in which the probation violations are charged.[4] "Where a statute is capable of two interpretations, one of which would make it constitutional and the other unconstitutional, it is well established in this jurisdiction that the court should adopt that construction which upholds

---

[4] We have previously held that it is a violation of the separation of powers doctrine to permit a prosecutor to veto a sentencing option post-judgment. *See generally State v. Easley*, 156 Idaho 214, 221, 322 P.3d 296, 303 (2014) ("Whatever authority prosecutors have as 'judicial officers,' that authority does not extend to determining sentencing when a defendant has been adjudicated guilty of a violation. That is the court's authority.")

the validity of the act." *Cowles Pub. Co. v. Magistrate Court of the First Judicial Dist. of State, Cty. of Kootenai*, 118 Idaho 753, 759, 800 P.2d 640, 646 (1990).

An examination of the legislative history behind section 19-2603 further demonstrates that the majority reaches a result neither intended nor foreseen by the legislature. In 2015, section 19-2603 was amended for the first time since its enactment in 1915. 2015 Idaho Laws, Ch. 99 (H.B. 0064). The *Statement of Purpose* behind this amendment states:

> This bill provides that such a defendant would receive credit for the time served as a condition of probation, ensuring that the total time of incarceration served by a defendant does not exceed the sentence imposed by the court. The bill would also clarify that a defendant who is served with a bench warrant or arrested on a probation violation charge receives credit for time served in jail following the service of the warrant of the arrest.

Statement of Purpose, RS 23413, H.B. 0064 (2015). The express intent of the legislation was to ensure that defendants receive full credit for their time in custody so that their period of incarceration "does not exceed the sentence imposed by the court." *Id.* It is not reasonable to presume that the legislature intended to achieve this goal by granting defendants with consecutive sentences additional credit for fictitious time not actually served, thereby shortening the judge's sentence. Read in the full context of the amendments, the legislature's stated concern for properly enforcing "the sentence imposed by the court" should reasonably be interpreted to mean that a defendant should serve no more *and no less* time than the sentence originally imposed by the court. Nothing in the legislation or its history addresses granting extra credit for consecutive sentences. Inasmuch as consecutive sentences, by definition, are typically only given to repeat offenders, it makes no sense to read these statutes as intending to grant greater leniency to the most serious offenders. In fact, the unavoidable consequence of the majority's interpretation is that such offenders may now unilaterally reduce the length of their overall sentence by delaying the admission of their probation violations in order to get double credit for time served.[5]

It is a cardinal principle of statutory construction to avoid reading ambiguous statutes in a manner that leads to an irrational result. Indeed, we have held that "[t]his Court will not read a statute to create an absurd result." *The David & Marvel Benton Tr. v. McCarty*, 161 Idaho 145,

---

[5] Under the majority's reading of the statutes in question, a defendant facing probation violations on three charges with consecutive sentences would receive credit for triple the time actually served. Given the varying number of consecutive sentences possible, even a lengthy sentence could be served in a fraction of the time contemplated by the sentencing judge.

151, 384 P.3d 392, 398 (2016); *see also Moser*, 443 P.3d at 150 (Idaho 2019); *State v. Chambers*, No. 45608, 2019 WL 1891005, at \*2 (Idaho Ct. App. Apr. 29, 2019); *Rome v. State*, 164 Idaho 407, 413, 431 P.3d 242, 248 (2018). "Constructions of an ambiguous statute that would lead to an absurd result are disfavored." *State v. McKie*, 163 Idaho 675, 678, 417 P.3d 1001, 1004 (Ct. App. 2018), *review denied* (May 23, 2018). Therefore, in sum, I believe interpreting these ambiguous statutes in a manner that awards Osborn credit for twice the time he actually served on his consecutive sentences leads to an absurd result and is contrary to the legislature's intent.

## III. CONCLUSION

Although the majority has diligently applied the law as they read it to this difficult case, I must dissent because the potential for abuse here is high and concerning. Aside from the obvious risks to the victim and the public posed by Osborn, other defendants facing consecutive sentences may now have a perverse incentive to delay admitting probation violations as long as possible in order to get double credit (or more) for the time they actually served. I take no solace in simply leaving resolution of this untenable situation to the mere hope that prosecutors will charge probation violations more strategically in the future, and that the legislature may someday clarify the statutes in question. Therefore, I respectfully dissent.


Justice BEVAN CONCURS.