## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 47101

| | | |
|---|---|---|
| **CONNIE L. SCHOEFFEL,** | ) | |
| | ) | |
| **Claimant-Appellant,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THORNE RESEARCH, INC.,** | ) | **Boise, June 2020 Term** |
| | ) | |
| **Employer-Appellant,** | ) | **Opinion Filed: October 16, 2020** |
| | ) | |
| **and** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **IDAHO DEPARTMENT OF LABOR,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

Appeal from the Idaho Industrial Commission.

The Commission's decision is <u>reversed</u>.

Parsons Behle & Latimer, Boise, for appellants. Amy Lombardo argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Douglas Werth argued.

_____

BRODY, Justice.

This appeal arises from a former employee's challenge to an unemployment benefits overpayment determination by the Idaho Department of Labor ("the Department"). Connie Schoeffel worked for Thorne Research, Inc. ("Thorne") as a kitchen manager. In 2016, Thorne announced that it would be moving its operations from Idaho to South Carolina. For those employees who would not be relocating to South Carolina, Thorne offered an employee retention program to encourage them to continue working at the Idaho facility until the South Carolina facility was ready. As part of this program, Thorne prepared a "Release of Claims Agreement" ("the Agreement") providing that Thorne would pay participating employees "bargained-for compensation" in exchange for giving up certain rights, including the right to quit before their

1

positions were eliminated. Schoeffel signed this Agreement approximately six weeks before her last day of work. After her separation, Schoeffel filed for unemployment benefits without reporting the retention payments as income. Around the time Schoeffel received her fourth benefit payment, the Department learned of the payments that Thorne owed Schoeffel under the Agreement. The Department determined that those payments constituted reportable "severance pay" under Idaho Code section 72-1367(4). Consequently, the Department determined that Schoeffel was receiving severance pay and was required to repay the unemployment benefits she had received. Schoeffel appealed to the Department's Appeals Bureau, which initially ruled in her favor but affirmed the Department's decision on reconsideration. Schoeffel then appealed to the Industrial Commission ("the Commission"), which affirmed the Appeals Bureau's decision. Schoeffel timely appealed to this Court from the Commission's Decision and Order. We reverse the decision of the Commission.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The key facts in this case are undisputed. Connie Schoeffel worked for Thorne as a kitchen manager in the cafeteria that Thorne provided for its employees. In December 2016, Thorne announced that it would be moving its headquarters and operations from Idaho to South Carolina. For those employees who would not be relocating to South Carolina, Thorne offered an Employee Retention Program to encourage them to keep working at the Idaho facility until the South Carolina facility was ready. Shortly after making its announcement, Thorne gave its employees a written Employee Retention Program Summary ("Program Summary") in order to explain the purpose, eligibility requirements, and elements of the Employee Retention Program.

As part of the employee retention program, Thorne's general counsel, relying on *Parker v. Underwriters Labs., Inc.*, 140 Idaho 517, 96 P.3d 618 (2004), prepared a "Release of Claims Agreement" (the "Agreement"). At the telephonic hearing before the appeals examiner, Thorne's general counsel testified that the intent in drafting the Agreement "was to follow as closely as [he] could what [he] believed to be [the] underlying law of [*Parker*]"—that bargained-for compensation, unlike compensation made in consideration of prior services rendered to an employer, is not reportable severance pay. The Agreement provided that Thorne would pay participating employees "bargained-for compensation" in exchange for giving up certain rights. Most importantly, the employees agreed to give up their right to quit before the end of their

2

"transition periods," when their positions at the Idaho facility would be eliminated. The Agreement also required employees to release any claims they might have against Thorne.

Under her Agreement, Schoeffel was to receive retention payments of $5,265.00 per month beginning on November 15, 2018, for a total of $31,590.00 over six months. Schoeffel signed the Release of Claims Agreement on August 2, 2018. Schoeffel's last day of work was September 13, 2018, and her last day of employment was September 28, 2018, due to her use of remaining paid leave. On October 1, Schoeffel filed for unemployment benefits. She earned waiting week credit during the week ending October 6, 2018 and received weekly unemployment benefits of $414.00 per week over the next four weeks.

However, in early November, the Department learned of the retention payments that Schoeffel was to receive beginning on November 15. The Department determined that those payments constituted "severance pay" under Idaho Code section 72-1367(4). Consequently, the Department determined that Schoeffel had been overpaid by $1,656.00—the total amount of unemployment benefits she had received up until that point—and that she was required to repay this amount to the Department.

Schoeffel appealed to the Department's Appeals Bureau, arguing that under the reasoning set out in *Parker*, the payments were bargained-for compensation, not severance pay. Following a telephonic hearing, the appeals examiner reversed the Department's decision. The appeals examiner determined that the retention payments were not reportable income, and as a result, Schoeffel was not required to repay the unemployment benefits she received. However, following the Department's request for reconsideration, the appeals examiner reversed the previous decision and affirmed the Department's overpayment determination.

Schoeffel, together with Thorne, filed a notice of appeal to the Commission from the appeals examiner's decision. The Commission entered a Decision and Order affirming the appeals examiner's decision. The Commission concluded that, as a matter of law, Schoeffel's retention payments were reportable income under Idaho Code sections 72-1312 and 72-1367. Consequently, Schoeffel's weekly benefit amount was properly reduced and Schoeffel was required to repay the unemployment benefits she received. Schoeffel, again jointly with Thorne, filed a timely notice of appeal from the Commission's Decision and Order.

3

## II.    STANDARD OF REVIEW

When reviewing a decision of the Industrial Commission, this Court freely reviews questions of law. *Nelson v. Franklin Grp., Inc.*, 166 Idaho 702, ___, 462 P.3d 1166, 1169 (2020).

## III.    ANALYSIS

The Commission erred by determining the payments were reportable severance pay. In its Decision and Order, the Commission affirmed the appeals examiner's determination that the payments Schoeffel would receive under the Agreement were reportable severance pay. It rejected Schoeffel's argument that our decision in *Parker v. Underwriters Labs., Inc.*, 140 Idaho 517, 96 P.3d 618 (2004) was controlling. It reasoned that because the legislature had not yet enacted a statutory definition of severance pay when *Parker* was issued, *Parker* no longer has a bearing on the determination of whether a payment constitutes severance pay. Schoeffel argues that the Commission erred in its refusal to apply *Parker*. We agree.

In *Parker*, we considered a claim very similar to the one advanced by Schoeffel, made in a very similar factual context. After Parker was terminated due to corporate restructuring, she was informed that she could receive a "severance package" if she agreed to sign a release of claims agreement. *Parker*, 140 Idaho at 518, 96 P.3d at 619. Parker signed this release of claims agreement and subsequently applied for unemployment benefits without reporting the payments she received through the "severance package." *Id.* The Department eventually learned of these payments and determined that they rendered her ineligible for the unemployment benefits she had received and that she was required to repay those benefits. *Id.* at 519, 96 P.3d at 620. The appeals examiner upheld this determination, and the Commission affirmed. *Id.* at 520, 96 P.3d at 621.

Parker appealed to this Court, arguing that the Commission erred because the payments did not fall within the definition of "severance pay," given that the primary purpose of the agreement with her employer was to obtain her release of claims. *Id.* We agreed, and reversed the Commission's decision on that ground. *Id.* at 522, 96 P.3d at 623. We first noted that the phrase "severance pay" was not defined in the section of the Idaho Administrative Code requiring severance pay to be reported to the Department. *Id.* at 520, 96 P.3d at 621. Consequently, we employed relevant rules of statutory construction by looking to dictionary definitions of "severance pay" and persuasive authority from other jurisdictions. *Id.* at 520-21, 96 P.3d at 621-22. We concluded that severance pay is compensation given in recognition of past

service, and in order to decide if a payment was made in recognition of past service, it is necessary to determine the primary purpose of the employer-employee agreement giving rise to the payment. *Id.* The primary purpose of the agreement is determined by the consideration the employer receives in exchange for its payments. *Id.* at 521, 96 P.3d at 622. In Parker's case, it was clear from the plain language of her agreement that the payments were made in consideration of her release of claims—not her past services. *Id.* Therefore, we concluded, the payments that Parker received did not constitute reportable severance pay. *Id.* at 522, 96 P.3d at 623.

The fundamental question in this case is whether *Parker*'s reasoning is still viable despite the legislature's enactment of a statutory definition of severance pay. For the following reasons, we hold that it is.

As the Commission noted, the legislature added a statutory definition of severance pay to Idaho Code section 72-1367(4) after *Parker* was issued. That statute, found within the Employment Security Law in Title 72, Chapter 13 of the Idaho Code, provides:

> If the total wages payable to an individual for less than full-time work performed in a week claimed exceed one-half (1/2) of his weekly benefit amount, the amount of wages that exceed one-half (1/2) of the weekly benefit amount shall be deducted from the benefits payable to the claimant. <u>For purposes of this subsection, severance pay shall be deemed wages, even if the claimant was required to sign a release of claims as a condition of receiving the pay from the employer. "Severance pay" means a payment or payments made to a claimant by an employer as a result of the severance of the employment relationship.</u>

I.C. § 72-1367(4) (emphasis added). The emphasized sentences were added to the statute in 2005, one year after our decision in *Parker* was issued. 2005 Idaho Session Laws, ch. 5, § 14, p. 27. As a result of this addition, "severance pay" is now defined as "a payment or payments made to a claimant by an employer as a result of the severance of the employment relationship." I.C. § 72-1367(4). The 2005 amendment also made it clear that severance pay is considered to be "wages," and therefore deductible from unemployment benefits according to the formula in Idaho Code section 72-1367(4). *Id.*

The Commission erred by failing to scrutinize the statutory definition of severance pay. It determined that the addition of a statutory definition must have made *Parker*'s reasoning obsolete, without engaging with Schoeffel's argument that *Parker* could still be useful in interpreting and applying the statutory definition. The Commission also distinguished *Parker* based on distinctions that do not actually made a difference. For example, it focused on the fact

5

that the Agreement required participating employees to release any claims they might have against Thorne. Because the statutory definition of severance pay explicitly provides that a release of claims requirement has no bearing on whether a payment is severance pay, the Commission reasoned, Schoeffel's retention payments constituted severance pay in spite of the Agreement's release of claims requirement. For the following reasons, we disagree with the Commission's analysis.

The addition of a statutory definition of severance pay did not affect *Parker*'s viability because the "as a result of" language in the statutory definition is ambiguous. A statute is ambiguous "where reasonable minds might differ or be uncertain as to its meaning." *State v. Lantis*, 165 Idaho 427, 429, 447 P.3d 875, 877 (2019). Here, reasonable minds might differ or be uncertain about the meaning of severance pay, as defined by Idaho Code section 72-1367(4). The statute states, almost tautologically, that severance pay is payment made as a result of severance—but tells us nothing about how to determine whether a payment was made "as a result of" severance. Relatedly, reasonable minds might differ as to the meaning of "as a result of." There are several different kinds of causation, so there are several different ways that this phrase could be interpreted. *See, e.g.*, *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833 (2018) ("[T]he law recognizes several types of causation. When a statutory provision includes an undefined causation requirement, we look to context to decide whether the statute demands only but-for cause as opposed to proximate cause or sole cause."). The dissent assumes that the statute requires but-for causation, but the plain language of the statute could just as easily be interpreted as requiring severance to be the sole or primary cause of the payment.

Because of this ambiguity, we must look outside of the statutory definition to determine how to decide whether a payment was made "as a result of" severance. *State v. Osborn*, 165 Idaho 627, 635, 449 P.3d 419, 427 (2019) ("[T]he rules for interpreting an ambiguous statute go beyond strict textualism."). In this case, we do not have to start from scratch. We already determined, in *Parker*, that a payment is made "as a result of" severance if the primary purpose of the employer-employee agreement—as determined by the consideration the employer received—is to compensate the employee for past services. *Parker*, 140 Idaho at 520–21, 96 P.3d at 621–22. If the payment was made in consideration of something else, it is not severance pay. *Id.* In this way, *Parker* resolves the ambiguity in the statutory definition of severance pay by providing a way to determine whether a payment was made "as a result of" severance. This

means *Parker* is still good law and must be applied in determining whether a payment is reportable severance pay.

Applying *Parker* to this case, we agree with Schoeffel that the payments she was to receive under the Agreement were not made in consideration of her years of service, but rather in consideration of giving up her right to quit before her position was eliminated. The plain language of the Agreement makes this clear. Additionally, the Program Summary is consistent with this conclusion. It was provided to Schoeffel in December 2016, twenty-two months before her job ended. The Program Summary states that the purpose of the Employee Retention Program was to compensate employees like Schoeffel for agreeing to continue working for Thorne:

> The Employee Retention Program is being offered to provide compensation to those employees who, on the one hand, have chosen not to relocate to the new Thorne facility in South Carolina, but who, on the other hand, have chosen to continue their employment at Thorne Research through the end of the "Transition Period" for their respective position.

The fact that the Agreement was not signed until shortly before Schoeffel's separation is irrelevant. It does not change the substance of the Agreement: an exchange of payments for relinquishment of the right to quit. Therefore, the retention payments were not made "as a result of" the severance of Schoeffel's employment relationship, and consequently did not constitute reportable severance pay under Idaho Code 72-1367(4).

The Commission correctly noted that the 2005 amendment to Idaho Code section 72-1367(4) provided that payments made as a result of severance constitute severance pay, even if the payments were conditioned on a release of claims agreement. I.C. § 72-1367(4). As a result, payments made now—unlike those made at the time *Parker* was issued—can be severance pay even if the only consideration received in exchange for the payments is the employee's release of claims. However, the Commission erred in determining that this change makes *Parker* distinguishable. It is true that Schoeffel's payments would be severance pay if they were made as a result of severance and were made in exchange for her release of claims *only*. However, although a release of claims was *one* of the conditions of receiving retention payments under the Agreement (and the Agreement's full title was "Release of Claims Agreement"), it was not the *only* condition. The key condition was Schoeffel's agreement to give up her right to quit. Therefore, the 2005 amendment's addition to Idaho Code section 72-1367(4) regarding release of claims agreements does not make *Parker* inapplicable or foreclose the possibility that

7

Schoeffel's retention payments were not severance pay. Again, because the primary purpose of the Agreement was to secure the relinquishment of Schoeffel's right to quit, rather than to compensate her for her past service to Thorne, they were not made "as a result of" severance under Idaho Code section 72-1367(4). Therefore, the retention payments do not constitute reportable severance pay. In light of our decision, we do not need to address Schoeffel's argument that the Commission failed to consider relevant evidence.

## IV. CONCLUSION

The Commission's decision is reversed.

Chief Justice BURDICK, and Justice BEVAN, CONCUR.

STEGNER, J., dissenting.

I dissent from the majority's opinion. Because Schoeffel's payments would not have been made but for her separation from Thorne, they constitute "severance pay" under Idaho Code section 72-1367(4).

The statutory definition of "severance pay" is sweeping given its "as a result of" language. This language requires a much different inquiry than the one used in *Parker*. We now ask only whether severance was a but-for cause of the payment. In other words, would the payment have been made absent severance of the employment relationship? If not, the payment is severance pay. Consequently, *Parker* now has limited value—its purpose-focused test has been displaced by the but-for test inherent in the statutory definition of severance pay.

It was not error for the Commission to conclude that the approximately $31,000 that Schoeffel was to receive through the Agreement was paid as a result of the termination of her employment. The Agreement was entered into about six weeks before her last day of employment. The Agreement provided that Schoeffel would begin receiving payments only after her separation: Schoeffel would receive the retention payments if, among other things, she agreed to remain a full-time employee "until September 27, 2018." In other words, Schoeffel would not be entitled to the payments unless and until she was discharged on her transition date. This clearly shows that the payments were made "as a result of" her separation from Thorne. This conclusion is further supported by the fact that, according to the Program Summary, workers who remained employed were excluded from participation in the Employee Retention Program:

8

*Exclusions*
- Employees who remain employed with Thorne after their Transition Period has concluded, by transferring to South Carolina, continuing as a "remote worker," or as a non-employee, independent contractor.

. . . .

The fact that the Agreement was meant to induce Schoeffel to stay does not take this case outside of the "as a result of" language. Neither does the label that Thorne gave to the payments or the conditions Thorne attached to those payments. Thorne would not have made the payments to Schoeffel but for the severance of her employment relationship. Under the statutory definition of severance pay, that is the end of our inquiry. The payments made under the Agreement were reportable severance pay. Therefore, I would affirm the Commission's decision.

Justice MOELLER concurs.